McPHERSON v. CAMDEN FIRE INS. CO.*
(No. 974.)

(Court of Civil Appeals of Texas. Amarillo. May 3, 1916. On Motion for Rehearing, May 17, 1916.)

1. STATUTES ⊂⇒110½(1)—TITLE — CONSTITUTIONALITY—"SUBJECT"—"OBJECT."

Acts 33d Leg. c. 105 (Vernon's Sayles' Ann. Civ. St. 1914, arts. 4874a, 4874b), entitled, "To prevent fire insurance companies from avoiding liability from loss and damage to personal property under technical and immaterial provisions of the policy or contract of insurance when the act breaching such provision has not contributed to bring about such loss," is not violative of the constitutional provision that, "No * * * bill shall contain more than one subject, which shall be expressed in its title," in that section 1 of the act provides that the breach of material and nontechnical warranties and provisions not contributory to loss shall be no defense or avoid the policy, since the "title" gives reasonable notice of the subject matter or "object" of the act, and the section referring to warranties and Constitution being germane to the title dominates or controls it, the effect of the act being to make any warranty not contributory to the breach an immaterial provision in the policy.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 139; Dec. Dig. ⊂⇒110½(1).

For other definitions, see Words and Phrases, First and Second Series, Object; Subject.]

2. INSURANCE ⊂⇒308—WARRANTIES—BREACH.

The breach of mere technical or immaterial provision in an insurance policy which does not contribute to the loss will not defeat or forfeit a right under the policy.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 700, 701; Dec. Dig. ⊂⇒308.]

3. INSURANCE ⊂⇒250(1), 302—AVOIDANCE OF POLICY—STATUTE—CONSTITUTIONALITY.

Acts 33d Leg. c. 105 (Vernon's Sayles' Ann. Civ. St. 1914, arts. 4874a, 4874b), providing that any breach or violation by the insured of any of the warranties, conditions, or provisions of a policy of fire insurance shall not render the policy void or constitute a defense for loss unless such breach or violation contributed to bring about the destruction, is constitutional.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 539; Dec. Dig. ⊂⇒250(1), 302.]

4. INSURANCE ⊂⇒335(3) — WARRANTIES — BREACH—IRON SAFE CLAUSE.

Acts 33d Leg. c. 105, § 1 (Vernon's Sayles' Ann. Civ. St. 1914, art. 4874a), providing that no breach or violation by the insured of any of the warranties, conditions, or provisions shall render void the policy or constitute a defense for loss unless such breach or violation contributed to bring about the destruction, refers to those warranties to be performed before the fire, and a breach of which might contribute to the loss and did not, and does not apply to warranties requiring the insured to keep books and accounts and deliver them to the company for examination after the fire, which breach could not contribute to or occur until after the loss.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 853; Dec. Dig. ⊂⇒335(3).]

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Suit by Electra McPherson against the Camden Fire Insurance Company. Judgment for the defendant, and plaintiff appeals. Affirmed.

Seay & Seay, of Dallas, for appellant. Thompson, Knight, Baker & Harris and Will C. Thompson, all of Dallas, for appellee.

HUFF, C. J. The appellant, Electra McPherson, instituted suit against appellee, the Camden Fire Insurance Company, on a fire insurance policy covering a stock of millinery situated in Jacksonville, Cherokee county, Tex. The policy was for $3,000.

The insurance company answered in part, setting up what is termed the record warranty clause, with other provisions of the insurance contract, and the violation of that clause as avoiding the policy. The appellant excepted to this answer because it did not show that the breach of the warranty clause contributed to bring about the destruction of the property. The court overruled these exceptions, and assignments of error are based on the rulings of the court thereto. The case

was tried to a jury, but by agreement the jury was withdrawn, and the case submitted to the court, who rendered conclusions of fact and law.

The court finds that the appellee company issued and delivered to the appellant its fire insurance policy for $3,000, and that the premium, $76.50, was paid. The policy was upon the goods of appellant consisting of millinery goods in the town of Jacksonville. The policy was dated the 20th day of March, 1914, and on the 17th day of April, 1914, the entire stock of merchandise was totally destroyed by fire; and at the time of its destruction .the merchandise was the property of appellant, and was of the value of $1,593.40.

The court finds that on the 30th day of April, 1914, the company denied liability under and by virtue of the policy and waived all provisions or requirements of the policy in regard to furnishing proof of loss by the company. He finds also that the appellant did not collude or conspire with appellee's agents in obtaining the policy, and that the fire was not caused or produced by appellant. He finds that she began the business in August, 1913, and at that date opened a set of books, which consisted of a ledger, cashbook, and journal. In the ledger was entered in the regular course of business her sales on credit and the wholesale bills or purchases made. She kept no books recording her invoices, but the invoices were kept together hung on a wire suspended on the wall. In her cashbook she made entries in the same in the regular course of business, showing sales made and cash received therefor, and cash paid out. In January, 1914, between the 1st and 5th of the month, she took an itemized inventory of her stock of goods on hand in the store, described in the policy, which showed the stock at that time to be of the value of $890. After that time her bookkeeping, as above mentioned, was continued as before to the time of the fire. The invoices and books and inventory taken by her were on hand and in her possession on the 20th of March, 1914, and at the time the policy was issued, and the books were after the issuance of the policy continued to be kept in the same manner. The fire occurred at night and when the store was not open for business. The books and records and inventory of the plaintiff were in the storehouse described in the policy sued on, and out of any iron or fireproof safe, and the same were destroyed by the fire which destroyed the stock of merchandise. The plaintiff's books of accounts, records, and inventory of the business named in the policy were in or on a wooden table in the store, being left there by appellant, and were burned and destroyed by the fire. He finds that the appellant did not keep on or about her premises any rubbish or anything else of that character which increased the hazard or risk in any way. He sets out in his findings the record warranty clause, which is as follows:

"**Record Warranty Clause.**

"The following covenant is hereby made a part of this policy and a warranty upon the part of the assured:

"Section 1. The assured will take a complete inventory of stock on hand at least once in each calendar year, and within twelve months of the last preceding inventory if such has been taken. Unless such an inventory has been taken within twelve calendar months prior to the date of this policy, and, together with a set of books showing a complete record of business transacted since the taking of such inventory, is on hand at the date of this policy, one shall be taken within thirty days after the date of this policy, or in each and either case this entire policy shall be null and void.

"Section 2. The assured will make and prepare in the regular course of business, from and after the date of this policy, a set of books which shall clearly and plainly present a complete record of business transacted, including all purchases, sales, and. shipments, both for cash and on credit, or this entire policy shall be null and void.

"The term 'complete record of business transacted,' as used above, is meant to include in said set of books a complete record of all property which shall go into the premises and be added to the stock and of all property taken from the stock, whether by the assured or by others, even though not technically purchases or technically  sales.

"Section 3. The assured will keep and preserve all inventories of stock taken during the current year, and also all those taken during the preceding calender year which are on hand when this policy is issued, and will keep and preserve all books which are then on hand showing a record of business transacted during the current calender year and the preceding calendar year.

"The assured will also keep and preserve all inventories taken after · the issuance of this policy and all books made and prepared after the issuance hereof showing a record of business transacted.

"The books and inventories, and each of same as called for above, shall be by the assured securely locked in a fireproof safe at night, and at all other times when the building mentioned in the policy is not actually open for business; or, failing in this, the assured shall keep such books and inventories, and each of them, in some secure place not exposed to a fire which would destroy said building; and, in the event of a loss or damage insured against to the personal property mentioned herein, said books and inventories and each of same must be delivered by the assured to this company for examination, or the entire policy shall be null and void, and no suit or action shall be maintained hereon for any such loss.

"It is understood and agreed that this clause and the requirements thereof is one of the inducing causes of the acceptance of the risk herein assumed and the issuance of this policy, and that the terms and requirements hereof are material to the risk, and to this insurance, and to any loss or damage happening to the property described in this policy.

"It is further agreed that the receipt of such books and inventories, or the request from them or either of them and the examination of the same, shall not be an admission of any liability under this policy, nor a waiver of and provision or condition of this policy, or of any defense of the same."

He finds that the record warranty clause was a reasonable provision and a material provision, and further:

"I find that after the loss by fire, and after receiving notice thereof, defendant demanded of plaintiff production and presentation to it of the books of the business which had been prepared in the regular course of business showing purchases made and sales made of the stock of

merchandise described in the policy and the presentation of the inventory taken of the stock of merchandise in January, 1914.

"I further find that the plaintiff did not present to the defendant set of books showing complete record of business transacted which had been kept and prepared by her in the regular course of business, showing purchases made and sales made, and did not present to the defendant the complete itemized inventory of stock which had been taken by her in January, 1914, and that she failed to do so because said books, records, and inventory, and all of the same, had been destroyed in the fire which destroyed the stock of merchandise.

"Conclusion of Law.

"I find as a conclusion of law that the plaintiff neglected and failed to comply with the record warranty clause set out in the policy attached and sued upon, and that said provisions, conditions, stipulations, and warranty were not immaterial and technical provisions, and that as a matter of law plaintiff is not entitled to recover any sum against the defendant except for the sum of $76.50 premiums, which was tendered into court by the defendant."

[1, 2] The appellant by assignments attacked the ruling of the court upon the demurrers and the judgment of the court in rendering judgment against the appellant because the warranty clause invoked is ineffective under Acts 33d Leg. c. 105, p. 194 (Vernon's Sayles' Ann. Civ. St. 1914, arts. 4874a, 4874b). This act is attacked by the appellee as being unconstitutional, in that the title of the act does not warrant the interpretation under the statute that a material or nontechnical provision in the fire insurance contract breached by the assured should be no defense or avoid the policy. The title of the bill in question gives the subject of the act, which is:

"To prevent fire insurance companies from avoiding liability for loss and damage to personal property under technical and immaterial provisions of the policy or contract of insurance when the act breaching such provision has not contributed to bring about such loss."

Under this act what is technical or immaterial? Shall the courts define it, or shall the Legislature? If the Legislature has defined it in the body of the act, must the court disregard that definition and declare the same in contravention of the caption, if the court thinks the provision of the insurance contract substantive or material? If so, any clause in the warranty clauses, under the usual policy, may be shown to be a reasonable provision, and it is always substantive when it is a warranty, and must be substantially complied with in order to prevent a forfeiture. What is meant by "one subject" in the constitutional provision, "No * * * bill shall contain more than one subject, which shall be expressed in its title"? The word "subject" is used in the present Constitution where "object" was used in the former.

"As used in the Constitution, the word 'subject' is that which is to be dominated or controlled by the particular law. * *. * A title or act essentially single in subject, which does not thus conceal or disguise the real purpose, is not subject to constitutional objection, although

185 S.W.—67

the ends intended to be reached through the subject may be many. The decisions made under former Constitutions in which the word 'object,' which in its ordinary signification means more clearly or the same as 'end' or 'purpose' than does the word 'subject,' was used, are conclusive of this question." Day Land & Cattle Co., etc., v. State, 68 Tex. 526, 4 S. W. 865, 872.

This subject named in the title of the bill is "dominated or controlled" by the law enacted. The subject of the act in question was to prevent fire insurance companies from avoiding liability on their policies when the act breaching the same did not bring about the loss. The object was to prevent a forfeiture on mere technical or immaterial matters that did not contribute to the loss. If the law passed was germane to the subject, it will dominate or control the title. The provision of the policy here breached was what is known as the iron safe clause. The act was the failure to preserve and produce the books on demand of the company. This act it is not pretended contributed to the loss sustained or brought about the loss. Section 1 of the act provides that no breach or violation by the insured of any of the warranties, conditions, or provisions shall render void the policy or constitute a defense for loss unless such breach or violation contributed to bring about the destruction. That this section precluded a forfeiture if the insured breached any warranty, condition, or provision in the policy does not appear to be denied by appellees, but, as we gather from appellee's brief, it is either unconstitutional because it is not germane to the title, or that the title limits the warranties, conditions, etc., to technical provisions; that is, that the title of the bill dominates and controls the law, and not, as the Supreme Court has said, the law enacted dominates or controls the title. This contention on the part of appellee reverses the rule established by our Supreme Court. The question therefore remaining is: Is the law germane or relevant to the subject? If so, this constitutional requirement is met. Warranties and covenants are provisions of the policy or contract of insurance, and therefore germane to the subject of the bill. We do not see how there could be deception in this title. The members of the Legislature, or other persons, were necessarily put upon notice as to what the law declares immaterial or technical. Any provision breached which does not contribute to the loss will not defeat a recovery, and the act makes it therefore immaterial as a provision in the policy. We think the title of the act fairly gives reasonable notice of the subject-matter of the statute, and therefore meets the requirements of the Constitution. Stone v. Brown, 54 Tex. 330; Austin v. McCall, 95 Tex. 565, 68 S. W. 791; Doeppenschmidt v. Railway Co., 100 Tex. 532, 101 S. W. 1080; Railway Co. v. Stoker, 102 Tex. 60, 113 S. W. 3; Snyder v. Compton, 87 Tex. 374, 28 S. W. 1062. It appears to be the contention in this case that

the expression avoiding liability "under technical and immaterial provisions" in the title limits the provision to only technical or immaterial provisions. Where the provisions are warranties or the like, they are not immaterial and therefore not subject to the act. In the Doeppenschmidt Case, supra, the Supreme Court, we think, answered this contention:

"We are of the opinion that the rule that the expression of one thing excludes another should not be applied to the title of a statute. It would be burdensome, if not intolerable, to require that the title should be as full as the act itself. The word 'title' implies that no such requirement exists. The purpose of the constitutional provision is merely to reasonably apprise the legislators of the contents of the bill, to the end that surprise and fraud in legislation may be prevented."

In that case the title of the act declares its purpose to be "from permitting Johnson grass and Russian thistles from going to seed on the right of way, and fixing a penalty." The title did not state that the owner of abutting land should have a right of action for damages sustained as was given in the body of the law. The Supreme Court held the title did not limit the right of action to the penalty fixed, but that the owner could sue for his damages under the statute, and the statute giving such right was not unconstitutional because not embraced in the subject. A mere technical or immaterial provision would not defeat or forfeit a right under the policy with or without the law. Goddard v. East Texas Fire Insurance Company, 67 Tex. 69, 1 S. W. 906, 60 Am. Rep. 1. It will not be presumed that the Legislature intended a foolish thing. The iron safe clause is no more material or binding than any other provision which is not made a warranty. Goddard Case, supra. Our courts, however, hold when this clause is made part of the policy that it is a promissory warranty, and must be substantially complied with. Brown v. Insurance Co., 89 Tex. 590, 35 S. W. 1060. It appears, as held by our courts, that the object of the clause is to facilitate the ascertainment of the extent of the loss, and is therefore reasonable, valid, and binding upon the assured. Insurance Co. v. Cummings, 78 S. W. 378, 379. Reversed, however, on another ground, 98 Tex. 115, 81 S. W. 705.

It follows, we think, under the act, that all warranties, conditions, and provisions required to be performed before the loss the breach of which by the assured which did not contribute to or produce the loss become merely technical and immaterial provisions, and cannot defeat a recovery for the loss or forfeit the right thereof under the policy. Such provisions cannot be relied upon as a defense to the action on the policy by the assured.

[3, 4] We believe the law to be constitutional. However, this does not necessarily defeat all warranty clauses in the policy. In a recent case by the Galveston Court (Commonwealth Insurance Co. v. Finegold, 183 S. W. 833) that court held the act constitutional, but further held the statute refers only to those warranties and provisions in policies the breach of which might have contributed to bring about the loss, but which did not, and that the act did not refer to the iron safe clause. We are not prepared to go to quite the extent the language of the court may imply, but we believe, where there are provisions in the policy which constitute a promissory warranty that are to be performed after the loss or destruction of the property, the act possibly will not reach such provision. It should be noted that the language used is "unless such breach or violation contributed to bring about the destruction of the property." One of the clauses in this warranty is "that, in the event of the loss or damage insured against to the personal property mentioned herein, said books and inventories and each of same must be delivered by the assured to this company for examination, or the entire policy shall be null and void, and no suit or action shall be maintained hereon for any such loss." Now, it would be impossible to breach the above provision or violate it until after the destruction of the property, and when the appellant was called upon after the fire for the books and inventory of the property, and which were not furnished. This was a breach of a provision of the contract of insurance which was to be performed after the destruction of the property. We therefore believe that it was not the purpose of the Legislature to deprive the insurance company of a defense on the breach of a warranty which under the contract was to be performed after the destruction of the property. The language of the statute we believe precludes such an intention.

In Iowa there is a statute in some particulars like our own, and in the case of Rundell v. Anchor Fire Insurance Co. (Iowa) 101 N. W. 517, the Supreme Court of that state quotes the statute, from which we take the following:

"It is contended, however, that such a stipulation is void under the provisions of Code, § 1743, the pertinent clause of which is in the following language: 'Any condition or stipulation in an application, policy or contract of insurance, making the policy void before the loss occurs, shall not prevent recovery thereon by the insured, if it shall be shown by the plaintiff that the failure to observe such provision or the violation thereof did not contribute to the loss.' "

That court held:

"On the other hand, the agreement to so keep and preserve the books and inventories, and to produce them in case action is brought for a loss under the policy, may reasonably be construed together as constituting a binding stipulation with reference to the evidence to be produced in order to entitle plaintiff to recover. Such a construction does not have the effect of rendering the policy void before the loss occurs, and therefore does not bring the condition within the statutory prohibition. We reach the conclusion that, as affecting a recovery in this action, the condition in the policy was valid, and the inability of the plaintiffs to produce the re-

quired books and inventories by reason of their failure to keep and preserve them as required by the stipulation in the policy would defeat plaintiffs' recovery unless the breach of the condition was waived."

It will therefore be seen that the Supreme Court of that state held that a covenant or warranty requiring the production of the books after the fire did not fall under their statute. However, this construction is based upon the wording of the statute, which refers to breach of the covenants "before the loss occurs." It occurs to us, however, that the effect and reading of our statute is substantially the same. Of course, there could be no breach of a clause that required of the assured to present the books to the company until after the fire, and the wording of the statute clearly implies and expressly states that the violation of the condition of the provision must have contributed to the loss, implying that it refers at least to a breach of those provisions to be performed before the fire which could have produced or contributed in some particular to the fire or the destruction.

On the clause requiring the books and accounts after the fire and the failure to produce them upon demand we are inclined to believe the judgment of the trial court to be correct, and, without discussing the other questions presented in the case, it will be affirmed.

### On Motion for Rehearing.

Appellant on motion for rehearing contends that the case of Johnson v. Farmers' Insurance Company, 126 Iowa, 565, 102 N. W. 502, in effect qualifies or overrules Rundell v. Anchor Fire Insurance Company (Iowa) 101 N. W. 517, cited by this court. The appellant in her original brief cited the Johnson Case, which was examined by us upon the original hearing. The two cases cited were decided by the Supreme Court of that state, and the latter does not refer to the former. There are portions of the iron safe clause, such as keeping a set of books in a safe and the like, which, if breached and did not cause the fire, would be eliminated by the statute. This is substantially the holding in the latter case. In the former the policy had a warranty to the effect that after the fire the assured should produce the books for examination by the company. This last clause the court held was not affected by the statute. We therefore concluded there was no conflict in the two cases, and that the court did not intend to modify its former holding. We, of course, do not consider that we have written into the statute a provision not included in it. It is provided by the statute:

"No breach * * * shall render void * * * unless such breach * * * contributed to bring about the destruction."

A warranty which required the production of the books after the fire could not be breached before the fire. It seems to us the clear implication of the act is that it must be such a breach of a warranty before the fire which contributed to the loss, and which could have caused the loss that the Legislature had in mind. The very construction of the sentence implies when property is destroyed liability cannot be defeated unless a breach of the contract contributed to it. It occurs to us that to say that the act further intended to make all those warranties nugatory which were required to be performed after the fire, such as to prove up the loss, prevent false swearing, provisions for adjustment, and the like, is to interpret the act to mean that all the contract is permitted to stipulate was to pay the stated value in the policy without a right to demand proof or evidence of the real amount lost. We do not believe such purpose can be read into the act.

The motion will be overruled.