**McPHERSON v. CAMDEN FIRE INS. CO.
(No. 118–2983.)**

(Commission of Appeals of Texas, Section A. May 19, 1920.)

1. **Statutes ⬉105(1) — Intention of Legislature to be ascertained, and statute upheld if possible.**

In ascertaining whether a statute is violative of Const. art. 3, § 35, providing that no bill shall contain more than one subject, which shall be expressed in its title, it is incumbent on the court to ascertain the intention of the Legislature, and, if possible by fair construction, to uphold it.

2. **Statutes ⬉105(1) — Constitutional provision as to title of acts liberally construed.**

Const. art. 3, § 35, providing that no bill shall contain more than one subject, which shall be expressed in its title, should be liberally construed, rather than embarrass the Legislature by a construction the strictness of which is unnecessary for the accomplishment of the beneficial ends for which it was adopted.

3. **Statutes ⬉116 — Title of statute, making breach of immaterial provision of policy no defense, held sufficient.**

Laws 1913, c. 105 (Vernon's Sayles' Ann. Civ. St. 1914, arts. 4874a, 4874b), entitled "An act to prevent fire insurance companies from avoiding liability for loss and damage to personal property under technical and immaterial provisions of the policy or contract of insurance where the act breaching such provision has not contributed to bring about the loss, and declaring an emergency," providing in section 1 (art. 4874a) "that no breach or violation by the insured of any of the warranties, conditions or provisions" of any policy shall render the policy void, or constitute a defense unless the breach contributed to bring about the loss, held not violative of Const. art. 3, § 35, providing that no bill shall contain more than one subject, to be expressed in its title; the statute having reference only to immaterial provisions.

4. **Statutes ⬉105(1)—Title viewed as part of law and body of act referred to in construing title as to expressing subject.**

In ascertaining whether a statute is violative of Const. art. 3, § 35, providing that no bill shall contain more than one subject, which shall be expressed in its title, the title of a statute will be viewed as a part of the law, and the body of the act will be referred to in construing the title.

5. **Insurance ⬉308—Statute as to breach of immaterial provisions not applicable where risk is affected.**

Laws 1913, c. 105, § 1 (Vernon's Sayles' Ann. Civ. St. 1914, art. 4874a), providing that no breach of "any of the warranties, conditions or provisions" of any fire policy, or application therefor, shall constitute a defense to a suit for loss thereon unless the breach contributed to bring about destruction of the property, held to have reference only to immaterial provisions, the breach of which could in no way affect the merits of claims for losses under them, in view of section 3 and the title of the act.

6. **Insurance ⬉308—Statute as to breach of immaterial provisions held inapplicable to certain clauses.**

Laws 1913, c. 105, § 1 (Vernon's Sayles' Ann. Civ. St. 1914, art. 4874a), making the breach of an immaterial provision of a fire policy not contributing to the destruction of the property no defense to suit thereon, held not applicable to the proof of loss clause of standard policy, the three-fourths value clause, the coinsurance clause, the incumbrance clause, or any other clauses, the breach of which could not bring about a loss by fire.

7. **Insurance ⬉335(4)—Breach of iron-safe clause held good defense.**

Breach of the "iron-safe clause," requiring inventory books, etc., to be kept in fireproof safe, required to be inserted in all policies covering stocks of merchandise by the Fire Commission Act (Vernon's Sayles' Ann. Civ. St. 1914, arts. 4876a–4904), held a good defense in action on policy insuring stock of millinery, notwithstanding Laws 1913, c. 105, § 1 (Vernon's Sayles' Ann. Civ. St. 1914, art. 4874a), making breach of immaterial provision in policy not contributing to loss no defense in action on policy; such statute having no application to the iron-safe clause.

8. **Insurance ⬉308—Statute as to breach of immaterial provisions applicable only to breaches which did not in fact contribute to loss.**

Laws 1913, c. 105, § 1 (Vernon's Sayles' Ann. Civ. St. 1914, art. 4874a), providing that breach of immaterial provision of policy not contributing to destruction of property shall constitute no defense in action on policy, held applicable only to those warranties and provisions the breach of which might have contributed to bring about the loss, but which in fact did not, and not to such provisions the violation of which could not have contributed to bring about the loss in view of Insurance Act of 1903, and Fire Insurance Commission Act,

---

§§ 18, 19 (Vernon's Sayles' Ann. Civ. St. 1914, arts. 4892, 4893).

Error to Court of Civil Appeals of Seventh Supreme Judicial District.

Suit by Electra McPherson against the Camden Fire Insurance Company. Judgment for defendant was affirmed by the Court of Civil Appeals (185 S. W. 1055), and plaintiff brings error. Affirmed.

Seay & Seay, of Dallas, for plaintiff in error.

Thompson, Knight, Baker & Harris, and Will C. Thompson, all of Dallas, for defendant in error.

TAYLOR, J. Electra McPherson sued the Camden Fire Insurance Company on its policy of insurance covering her stock of millinery at Jacksonville, Tex. By agreement the case was withdrawn from the jury and submitted to the court. The court found that the company on March 20, 1914, delivered to plaintiff its policy for $3,000, and that the first annual premium, in the sum of $76.50, was paid; that on the night of the 17th of April following, plaintiff's entire stock of millinery, valued at $1,563.40, was destroyed by fire. The record warranty clause of the policy, sometimes called the "iron safe clause," the breach of which was interposed by the company as a defense, is set out in full in the court's findings. By its terms, plaintiff agreed to take a complete inventory of the stock, keep a set of books showing clearly all purchases, sales, and shipments, keep and preserve the books and inventories, and at night, and at all other times when the store was not open for business, keep them locked in a fireproof safe, or in some secure place; and in the event of loss or damage insured against, to deliver both the inventories and books to the company for examination. The clause stipulated, among other things, that its requirements were an inducing cause to the acceptance of the risk.

The court found that the clause was a reasonable and material provision of the policy, and stated as a conclusion of law that it was not an immaterial and technical provision; that plaintiff, having failed to comply with its terms, was not entitled to recover against the defendant in any amount, except the sum of $76.50, tendered into court by the company as the premium paid. Judgment was rendered in favor of the company, in keeping with the court's findings and conclusion, and on appeal was affirmed. (Civ. App.) 185 S. W. 1055. The writ was granted upon application referred to the Committee of Judges.

The case turns upon the construction of an act of the Thirty-Third Legislature (Gen. Laws 1913, p. 194), section 1 of which has been brought forward in Vernon's Sayles' Civil Statutes as article 4874a. The act, including the title and emergency clause, and omitting section 2 of the enacting clause, is as follows:

"An act to prevent fire insurance companies from avoiding liability for loss and damage to personal property under technical and immaterial provisions of the policy or contract of insurance where the act breaching such provision has not contributed to bring about the loss, and declaring an emergency.

"Section 1. That no breach or violation by the insured of any of the warranties, conditions or provisions of any fire insurance policy, contract of insurance, or application therefor, upon personal property, shall render void the policy or contract, or constitute a defense to a suit for loss thereon, unless such breach or violation contributed to bring about the destruction of the property. * * *

"Sec. 3. Whereas, under the existing laws, insurance policies and contracts may be defeated upon purely technical provisions and defenses that in no way affect the merits of the claim against the insurance company, and such defenses have been upheld to the extent of making it almost impossible for an insurance policy upon personal property to be collected by suit, creates an emergency and imperative public necessity that the constitutional rule requiring bills to be read on three several days in each house be suspended, and that this act take effect and be in force from and after its passage, and it is so enacted."

If the act is not in contravention of the Constitution of the state, and embraces within its provisions the record warranty clause of the policy sued upon, plaintiff is entitled to recover; otherwise the judgments of the trial court and Court of Civil Appeals should be affirmed.

It is urged that the act is violative of section 35, article 3, of the Constitution, providing that no bill shall contain more than one subject, which shall be expressed in its title.

[1, 2] This position, in the view we take of the purpose and scope of the act, is not tenable. It is incumbent upon the court to ascertain the intention of the Legislature, and, if possible by fair construction, uphold it. The constitutional provision referred to should be construed liberally, rather than embarrass legislation by a construction the strictness of which is unnecessary to the accomplishment of the beneficial ends for which it was adopted. Morris v. Gussett, 62 Tex. 741; City of Austin v. McCall, 95 Tex. 575, 68 S. W. 791.

[3] The subject as expressed in the title, without relation to the purpose of the act, is the technical and immaterial provisions of fire insurance policies or contracts, or, more briefly expressed, without material change of meaning, the immaterial provisions of fire insurance policies. The end to be reached through the subject, or the subject stated in relation to the purpose of the

act, is to prevent fire insurance companies from avoiding liability under such provisions. The purpose expressed in the title, and no other, in our opinion, is effectuated by the provisions of the act.

[4] Viewing the title as a part of the law (M., K. & T. Ry. Co. v. Mahaffey, 105 Tex. 394, 150 S. W. 881), and referring to the body of the act in construing the title, which is permissible (Austin v. McCall, supra), we have concluded that they are not necessarily in conflict, and that neither is broader than the other. So viewed, the act is not subject to the constitutional objection urged.

Several of the Courts of Civil Appeals have applied the act in cases in which its constitutionality was questioned, usually upon the ground stated above. While holding different views as to the proper interpretation of the act, none have expressed any doubt as to its constitutionality. Commonwealth Insurance Co. v. Finegold (Civ. App.) 183 S. W. 833; Camden Fire Insurance Co. v. McPherson (Civ. App.) 185 S. W. 1055; Westchester Fire Insurance Co. v. McMinn (Civ. App.) 188 S. W. 25; M. & M. Ins. Exchange v. So. Trading Co. (Civ. App.) 205 S. W. 352; Allemania Fire Insurance Co. v. Angier (Civ. App.) 214 S. W. 450; Ætna Insurance Co. v. Lewis (Civ. App.) 204 S. W. 1170; Ætna Ins. Co. v. Waco Co. (Civ. App.) 189 S. W. 315; Westchester Fire Insurance Co. v. Roan (Civ. App.) 215 S. W. 985.

[5] The purpose of the act is not to prevent fire insurance companies from incorporating in their policy contracts provisions of any character or class, but to prevent such companies from avoiding liability under immaterial provisions. Only such provisions, it is clear from the language of the title, are embraced within its terms. It is thus apparent that the scope of the act is not unrestricted, and that not all policy provisions are intended to be brought within its purview. It is apparent also from section 3, containing the emergency clause, that the Legislature intended to bring within the terms of the act only that class of fire policy provisions the breach of which could in no way affect the merits of claims for losses under them. It should not be assumed, we think, in view of the limitation of the scope of the act expressed in the title, and the implication of its restricted application as pointed out in section 3, that the Legislature intended the act to embrace all stipulations of the policy, or that it intended that a test, in no way related to the legitimate purposes of a limited class of stipulations, should be applied after the fire, as a measure of the materiality of all the stipulations. To so construe the act is to have it say in effect that no breach of a stipulation of a certain class shall render the policy void, unless such breach contributed to do that which it could not do.

The difficulty in construing the statute invoked in this case, in view of the limitations pointed out, is in determining what provisions of fire policies are within its terms. The class to which it is applicable is not defined except upon the basis of materiality, which is to be determined in each individual case after the loss has occurred, by the test of whether the breach of the provision interposed as a defense contributed to bring about the destruction of the insured property. The logical inquiry is therefore whether there is a class of provisions to which the test referred to is peculiarly applicable in determining their materiality, and whether there is a class to which such a test is wholly inapplicable.

The policy sued on contains a clause which is termed a "gunpowder and kerosene permit." Under its terms, the amount of powder or kerosene allowed to be kept on the premises is limited, and the number of feet from an artificial light at which it is permitted to be handled is specified. The permit provides that failure to comply with its conditions shall render the policy void. The limitations were inserted to decrease the likelihood of fire, and failure to observe them would have increased the probability of its occurrence, and might have contributed directly to bring it about.

In the Finegold Case, supra, the court found as a fact that the keeping of gasoline on the insured premises was a breach of the insurance contract by the insured, but further found that such breach did not contribute to bring about the destruction of the property insured. The Court of Civil Appeals applied the act under consideration, being of the view that the stipulation as to keeping gasoline was immaterial, in that its breach did not contribute to bring about the loss, and that the act had for its object the denial of such defense to the company as a means of escaping liability.

Many policy provisions of the class referred to are used in the standard policy forms prescribed by the state fire insurance commission; such as, provisions restricting the use of gasoline stoves, acetylene gas, limiting the amount of calcium carbide, benzine, etc., that are permitted to be stored on and in the vicinity of the insured property, and other provisions the evident purpose of which is fire prevention. To this class of warranties, conditions, and provisions the test prescribed by the act is peculiarly applicable in determining whether they are immaterial within its meaning, therefore within its purview.

[6] The policy sued on contains the standard form of proof of loss clause. It has no such relation to the causes of the loss of goods by fire as that its breach could bring about such loss. Fire prevention is not its purpose. It is evident from its stipulations that its materiality cannot be measured by

whether, if breached, it could have contributed to destroy the property. The Court of Civil Appeals in this case held the act not applicable to proof of loss clauses because they cannot be reached until after the fire. We concur in the conclusion reached, but think the primal reason upon which it rests is that a breach of the clause could not contribute to bring about the loss. Its materiality is not dependent upon the time of breach.

Again applying the test as a basis of classification for determining the policy provisions within the purview of the act, it excludes the three-fourths value clause, the coinsurance clause, the incumbrance clause, or any other clauses of fire policies, the breach of which could not bring about a loss by fire.

It is apparent from the respective functions of the policy stipulations pointed out that there is a class of fire policy provisions to which the test referred to is wholly inapplicable, as well as a class to which it is peculiarly applicable.

The "iron-safe clause" of the policy sued on is the provision with which we are immediately concerned. It has no direct relation to fire prevention. Its purpose in policies covering stocks of merchandise is to furnish the insurer the most reliable sources of ascertaining the amount and value of the goods destroyed, and the extent of its liability; to provide business methods whereby the rights of the parties may be determined and adjusted; and also to afford the insurer protection against misrepresentation and fraud. Joyce on Insurance (2d Ed.) vol. 3, § 2063a; Teutonia Insurance Co. v. Tobias (Civ. App.) 145 S. W. 251.

In this case, plaintiff in error issued and delivered its policy, covering defendant in error's stock of millinery, for a premium, the amount of which was based, among other things, upon her agreement to make an inventory, keep books, preserve them in a fireproof safe, or some other place secure from fire, and produce them for inspection in the event of loss. The stock was valued at $3,000 when insured. When destroyed by fire, it had been considerably reduced. The books were neither kept nor preserved. The breach of the stipulation had the effect of depriving plaintiff in error of the sources for ascertaining the amount and value of the goods destroyed, and bears directly upon the merits of the case.

[7] The state fire insurance commission, whose duty it is under the Fire Commission Act, later referred to, to prescribe all standard forms, clauses, etc., used in connection with insurance policies, requires that the "iron-safe clause" be inserted in all policies covering stocks of merchandise. Its use in such policies tends to stabilize the fire insurance business, and to promote honesty and fair dealing. Our courts recognize it as a reasonable and material provision of such policies, and hold that it must be substantially complied with by the assured. Assurance Co. v. Kemendo, 94 Tex. 371, 60 S. W. 661; Insurance Co. v. Willock (Civ. App.) 29 S. W. 219; Insurance Co. v. Center (Civ. App.) 33 S. W. 555; Couch v. Insurance Co., 32 Tex. Civ. App. 44, 73 S. W. 1077. The act was framed in view of settled judicial construction, and the Legislature, we think, did not intend by its enactment to provide for determining the materiality of the "iron-safe clause" after the fire, the test of whether its breach brought the fire about, a criterion wholly unrelated to its function, or the function of any provision, other than those concerned with fire prevention.

The Court of Civil Appeals, in construing the act in its relation to the "iron-safe clause" in the case of Westchester Fire Insurance Co. v. McMinn, supra, held that its purpose could not properly be said to limit the right of the contract respecting stipulations not bearing upon the peril of fire itself, and that it goes no further than to place a limitation upon the effect of such stipulations, saying that the evident aim of the law was to so far modify the rule respecting stipulations of fire hazards as not to make a forfeiture of the policy depend, as before the passage of the act, upon merely the question of compliance or noncompliance with the particular stipulation; but, instead, to make the effect of such breach dependent on its materiality to the question of actually contributing to bring about the loss.

In the case of Commonwealth Insurance Co. v. Finegold, supra, the court passed directly upon the question of whether the "iron-safe clause" is embraced within the terms of the act under consideration. Judge McMeans, speaking for the court, said:

"But quite a different question is presented * * * as to the iron-safe clause. The statute, we think, has reference to only those warranties and provisions in policies, the breach of which might have contributed to bring about the loss, but which in fact did not, and was passed, we think, with the sole purpose of preventing insurance companies from escaping liability for the violation of a provision of the policy where the breach could have, but in fact did not, contribute to bring about the destruction of the insured property. In regard to other warranties or conditions in the policy, the violation of which could not have contributed to bring about the loss, such, for instance, as the iron-safe clause, the statute does not apply."

[8] The foregoing excerpt is, in our opinion, a correct and succinct statement of the scope and effect of the act. The holding there expressed has been followed substantially by the Amarillo court in this case, and by the Texarkana court in Westchester Fire Insurance Co. v. McMinn, supra. The cases

of Ætna Insurance Co. v. Waco Co. (Civ. App.) 189 S. W. 315, Ætna Insurance Co. v. Lewis (Civ. App.) 204 S. W. 1170, Allemania Fire Insurance Co. v. Angier, supra, Westchester Fire Insurance Co. v. Roan, all by the Austin court, Camden Fire Insurance Co. v. Bond (Civ. App.) 202 S. W. 220, Dallas court, and Insurance Co. v. Nelms (Civ. App.) 184 S. W. 1094, M. & M. Ins. Exchange v. So. Trading Co., supra, Ft. Worth court, are cited in support of defendant in error's contention that the act applies to all promissory warranties, conditions, and agreements, regardless of whether their breach could contribute to the destruction of insured property.

In the case last cited, the court, being of the view, notwithstanding the limitation placed upon the scope of the act by the language of the title, and the implied restriction in section 3 pointed out, that it applies to all promissory fire policy warranties, conditions, and provisions, of whatever class, relied to some extent in ascertaining the legislative intent upon an exhaustive research of the judicial decisions relating to insurance contracts, antedating the passage of the Insurance Act of 1903 (General Laws 1903, p. 94).

The body of the 1903 act, as of the act under consideration, construed apart from its connection with the title, was susceptible of an all-inclusive interpretation as to the warranties, etc., within its purview, but, in view of the language of the title, was construed, in accordance with the legislative intent, as not embracing promissory warranties, or agreements to perform acts in the future, such as are contained in the "iron-safe clause." We think the evils remedied by its passage afford no index to the legislative intent in the passage of this act.

The act of 1903 is not unimportant, however, as an aid in the construction of the statute invoked in this case, marking as it does the beginning of the legislative policy of restricting the effect of certain policy stipulations. After its enactment and construction, the breach of material promissory provisions of fire policies, regardless of whether contributing to bring about fire losses, continued to constitute a valid defense to recovery under such policies. Speaking generally, the act did not affect the validity or materiality of the two general classes of promissory warranties of fire policies, above pointed out, to wit: (a) Those the breach of which could bring about a loss of fire; and (b) those the breach of which could not.

Ten years later, 1913, the Thirty-Third Legislature at its regular session passed two acts relating to fire policy contracts, to wit, the act invoked in this case, passed March 29, 1913, and the Fire Insurance Commission Act, passed two days later. General Laws 1913, p. 195 (Vernon's Sayles' Ann. Civ. St. 1914, arts. 4876–4904). The effect of the former, as stated above, was to render invalid all defenses to suits on fire policies covering personal property, based on any of their provisions the breach of which could bring about the loss, unless such breach actually contributed to bring it about. Policy provisions, the breach of which could not in any event bring about the loss, were unaffected by the act.

That the Legislature intended not to include such stipulations within the act is apparent from those provisions of the Fire Insurance Commission Act, which expressly prohibit the use of two fire policy stipulations of the class not affected by the former act. Section 18 of the Fire Commission Act (section 4892) declares void any fire policy provision stipulating that the existing incumbrances on the property insured, or any subsequent incumbrance, shall render the policy void. Section 19 (section 4893) prohibits the issuance of a policy containing any provision requiring the insured to maintain a larger amount of insurance than that expressed in the policy, or making the insured liable as coinsurer (except in policies covering grain, cotton, and other products). Both sections 18 and 19 prohibit the use of policy provisions, the breach of which could not in any event bring about the destruction of the property. If provisions of this class were within the purview of the former act, and in effect nullified by its terms, then the enactment of sections 18 and 19 as a part of the latter was useless, or, to say the least, a work of supererogation not to be attributed to the Legislature. The two acts, being passed at the same legislative session, should be construed each in the light of the other. H. & T. C. Ry. Co. v. State, 95 Tex. 507, 68 S. W. 777. So construed, and viewed in the light of the intrinsic aids to construction herein applied, it seems conclusive that no promissory warranties, conditions, or provisions of a fire policy, the breach of which could in no event contribute to bring about the loss of the property insured, are within the purview of the act invoked The "iron-safe clause" is not an immaterial provision of the policy sued on, and its breach, in our opinion, constitutes a valid defense to a claim for loss under it; and defendant in error, having failed to comply with its provisions, is not entitled to recover more than the premium paid.

The case has been considered by the Commission as a whole in connection with Ætna Insurance Co. v. Waco Co. (Civ. App.) 139 S. W. 315, referred to Section B. The writ was granted in that case, as stated in the notation made by the Committee of Judges, for the reason that a writ had been granted in this case involving the construction of the same statute. The view herein expressed as

to the scope and effect of the statute referred to, and its proper construction, is that of both sections of the commission, and is unanimous.

We recommend that the judgments of the district court and the Court of Civil Appeals be affirmed.

PHILLIPS, C. J. We approve the judgment recommended in this case.

---

⬤⟳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes