**TEXAS FARM BUREAU MUTUAL INSUR-
ANCE COMPANY, Appellant,**

v.

**B. B. CARNES, Appellee.**

**No. 245.**

Court of Civil Appeals of Texas.

Corpus Christi.

May 18, 1967.

Rehearing Denied June 22, 1967.

M. W. Meredith, of Keys, Russell, Watson & Seaman, Corpus Christi, for appellant.

Donald A. Edwards, of Cullen, Mallette, Maddin, Edwards & Williams, Victoria, for appellee.

## OPINION

NYE, Justice.

Appellee Carnes brought this suit on a fire insurance policy against Texas Farm Bureau Mutual Insurance Company, the appellant. The insurance company insured a cotton picking machine of Carnes against various risks, including loss by fire. A rubber stamped endorsement in red ink was placed on Carnes' yellow colored insurance policy, which was called "Endorsement No. 10." This endorsement provided that the "cotton pickers insured under this policy are limited to custom farming within a radius of 50 miles from the principal place of garagement." Carnes garaged his cotton picker in Victoria, Texas. In September of 1963, while the policy was in force, Carnes engaged in custom farming near Clay, Texas, about 150 miles from Victoria when the cotton picking machine was damaged by fire. The insurance company and Carnes could not agree on the amount of damage, whereupon Carnes brought suit on the policy. The insurance company defended primarily on two grounds, both of which would deny Carnes any recovery under his policy. First, that the "Endorsement No. 10" was breached by Carnes and therefore Carnes cannot recover. Second, in any respect because Carnes failed to file a sworn proof of loss as required by the policy, this too bars recovery.

Carnes contends that the breach of "Endorsement No. 10" cannot be urged as a defense, because such a provision is made unenforceable by Art. 6.14 of the insurance code. Art 6.14 reads as follows:

"No breach or violation by the insured of any warranty, condition or provision of any fire insurance policy, contract of insurance, or applications therefor, upon personal property, shall render void the policy or contract, or constitute a defense to a suit for loss thereon, unless such breach or violation contributed to bring about the destruction of the property."

It is undisputed that Carnes breached "Endorsement No. 10" in that he was doing custom farming more than fifty miles from the principal place of garagement. The jury found that the breach of such provision in the policy did not, however, contribute to the fire loss on Carnes' cotton picker. This finding is not contested on appeal.

It is the insurance company's position that Carnes' breach of "Endorsement No. 10" could not have contributed in any way to the loss and therefore under the cases construing Art. 6.14 this statute does not apply. It is the company's further contention that this endorsement either limits the coverage or is a warranty and not merely a representation or a statement and therefore the breach of such provision is material to the risk and therefore bars recovery.

The plain language of the statute would seem to bring "Endorsement No. 10" within its purview. This endorsement reads in full:

"Subject to all other terms and conditions of the policy to which this en-

dorsement is attached it is understood and agreed by and between the Company and the Named Assured that in consideration of the premium paid, the combines and/or cotton pickers insured under this policy are limited to custom farming within a radius of 50 miles from the principal place of garagement."

The statute deals with personal property (here a self-propelled cotton picking machine); Endorsement No. 10 is either a warranty, condition or provision contained in a fire insurance policy; and a provision contained in the endorsement was breached. However, the breach did not contribute to bring about the loss of the property, therefore: Appellee Carnes argues, the company should not be permitted to assert such breach as a defense.

The courts have interpreted this statute so that it affects only those warranties, conditions and provisions in policies, the breach of which might have contributed to bring about the loss, but which, as a matter of fact, did not. McPherson v. Camden Fire Ins. Co., 222 S.W. 211 (Tex.Com.App.1920, Judgment approved by Supreme Court); Providence-Washington Ins. Co. v. Levy & Rosen, 222 S.W. 216 (Tex.Com.App. Sec. A 1920, holdings approved); Aetna Ins. Co. v. Waco Co., 222 S.W. 217 (Tex.Com.App. Sec. B 1920, holdings approved). The McPherson case above cited is the leading and controlling case interpreting Art. 6.14 and is a joint holding of both sections of the Commission of Appeals. The holdings approved by the Supreme Court have never been modified or overruled. Both parties to this appeal cite it as authority for their contentions. An analysis of this decision and others becomes necessary for the proper determination of this appeal.

The original act (Gen.Laws 1913, p. 194, 33rd Leg., Sayles' Civil Statutes, article 4874a) sometimes called the "anti-technical" statute, provided in its emergency clause that the statute was passed to prevent fire insurance companies from avoiding liabil-ity for loss and damage to personal property under technical and immaterial provisions of the policy of insurance where the act of breaching such provision did not contribute to bring about the loss. In "Sec. 3" of the act, it stated that "Whereas, under the existing laws, insurance policies and contracts may be defeated upon purely technical provisions and defenses that in no way affect the merits of the claim against the insurance company, and such defenses have been upheld to the extent of making it almost impossible for an insurance policy upon personal property to be collected by suit, creates an emergency * * *" etc. Following the passage of this act there developed a marked split among the several courts of civil appeals as to its interpretation and applicability. At least three of the courts of civil appeals held that the act applied to all promissory warranties, conditions and agreements. On the other hand at least three other intermediate appellate courts reasoned that there seems to be a class of insurance policy clauses to which the application of the test of non-contribution to a loss (this being the only test set out by the Legislature in the Act) seemed illogical, since obviously the violation of some such clauses could never contribute to the loss. The Commission in the McPherson case acknowledges that the language in the body of the Act is broad enough to apply to all warranties, conditions and provisions. In order to justify holding that it does not apply to some clauses in the fire insurance policies, the Commission turns to the title of the Act wherein the phrase " * * * immaterial provisions * * *" is found. This shows, the Commission reasons, that the Legislature did not intend to reach all provisions in the insurance policies. In other words, the court limited the application to that class of fire insurance policy provisions, the breach of which might have contributed to bring about a loss by fire, but which did not. If the cancellation clause in a policy was a material provision and the violation of which could not from the very nature of the provision contribute

to bring about the destruction of the property, the statute (Art. 6.14) would have no application. See *Citizens State Bank v. American Fire & Casualty Co.*, 5 Cir., 198 F.2d 57. The McPherson case suggests that each individual case must be examined after the loss has occurred to determine whether the breach of the provision can be interposed as a defense. One test that seems to have merit as to whether or not the provision was material to the insurance risk, would be whether or not the insurance company would decline the insurance altogether or refuse to accept it unless it received a higher premium. See *St. Paul Fire & Marine Ins. Co. v. Huff*, Tex.Civ. App., 172 S.W. 755. Using these tests we find that our courts have held that the following provisions were material and the breach of such provisions could not have contributed to the loss and therefore the statute would have no application:

(1) The three-fourths value clause; (2) the co-insurance clause; (3) the incumbrance clause (*McPherson v. Camden Fire Ins. Co.*, supra); (4) the "Iron Safe" or "record warranty" clauses (*Philadelphia Underwriters Agency v. Driggers*, 111 Tex. 392, 238 S.W. 633, Sup.Ct. 1922); (5) provisions that are against other, concurrent, or additional insurance; (6) provisions that require that the insured be the sole and unconditional owner; (7) representations to the effect that the insured had never been refused other insurance; (8) representations that the insured property was fully paid for; (9) provisions requiring the insured to submit to examination after the loss; (10) requirements that the insured furnish a certificate of a magistrate, or a notary public, as a part of the proofs of loss; (11) provisions or conditions that the policy shall be void if the insured, prior to loss, is informed that foreclosure proceedings have been commenced; and (12) to provisions that limit the time within which to commence suit to two years and a day after cause of action arose (*Holston v. Implement Dealers Mut. Fire Ins. Co.*, 5 Cir., 206 F.2d 682 at 685); 32 Tex.Jur.

2d, pp. 384–387, § 228; also 24b Tex.Jur., pp. 398–402, § 178, and cases cited therein supporting the above provisions. The Mc-Pherson case (supra) lays down the rule whereby the above provisions are not affected by the statute (Art. 6.14). The rule is:

"* * * no promissory warranties, conditions, or provisions of a fire policy, the breach of which could in no event contribute to bring about the loss of the property insured, are within the purview of the act invoked. * * *"

The provisions which are applicable to the anti technical statute fall within the rule laid down by the Court of Civil Appeals in *Commonwealth Ins. Co. of New York v. Finegold*, 183 S.W. 833, quoted with approval by the Supreme Court in the Mc-Pherson case, supra:

"* * * The statute, we think, has reference to only those warranties and provisions in policies, the breach of which might have contributed to bring about the loss, but which in fact did not, and was passed, we think, with the sole purpose of preventing insurance companies from escaping liability for the violation of a provision of the policy where the breach could have, but in fact did not, contribute to bring about the destruction of the insured property. * * *"

The court used as examples, provisions in fire insurance policies restricting the use of gasoline storage, acetylene, gas, the limiting of the amount of calcium carbide, benzine, etc., that are permitted to be stored on and in the vicinity of the insured property. *32 Tex.Jur.2d 228*, pp. 384–386.

In a rather recent Federal case, the district and appellate courts had the opportunity to construe this Texas statute (Art. 6.14 Insurance Code) and the Texas law (the McPherson case, supra) and its application to a fire insurance policy. The Federal courts had before them a situation somewhat analogous to the case before us. Although the case was reversed on other grounds the court considered the breach of a clause contained in a fire insurance poli-

cy, the effect of which was that a boat (personal property) owned by the insured was restricted to private use only. This clause was breached by the commercial use of the boat by the insured, but the breach of the provision did not contribute to the loss, although it could have. The court said:

" * * * It is obvious from the evidence in this case that Plaintiffs' (insureds') use of the Wanderer (boat) commercially had nothing whatsoever to do with its destruction by fire. That being true, Plaintiffs' breach of the warranty to the effect that the Wanderer would be used only for private use, under the provisions of said Art. 4930 (now Art. 6.14 Insurance Code) and the construction of that statute given by the courts of the State of Texas, is not available to the Defendant (insurance company) as a defense. (Citing McPherson v. Camden Fire Ins. Co. (Tex.Com.App.) 222 S.W. 211; Citizens State Bank of Dickinson, Texas v. American Fire & Casualty Co. (5th Cir.) 198 F.2d 57, 59; Holston v. Implement Dealers Mutual Fire Ins. Co. (5th Cir.) 206 F.2d 682, 685; Trinity Universal Ins. Co. v. Daniel (Tex.Civ.App.) 202 S.W.2d 266; and Springfield Fire & Marine Ins. Co. v. K. M. A. Fuel Oil Co. (Tex.Civ.App.) 78 S.W.2d 1053." (Parenthesis supplied). Wilburn Boat Co. v. Fireman's Fund Insurance Co, 199 F. Supp. 784, U.S.Dist.Ct.1960, Eastern Dist. of Texas.

The case was appealed to the United States Court of Appeals, 5th Circuit. This particular holding of the Federal District Court was approved. The appellate court said:

"The District Court, applying Texas law, held (A) that the use of the Wanderer to carry passengers for hire was no defense *based on breach of the warranty* against such use because the breach warranted against did not contribute to bring about the destruction of the vessel within the meaning of Article 6.14 of the Texas Insurance Code; * * *

"In view of the clear language of the statutes, and recognizing the undoubted uniform application of the law by the Texas courts to the effect to be given to warranties, we find that neither of the first two breaches of warranty can be urged as a defense. We find, therefore, that in finding against the defenses of breach of warranty arising from parts numbered 1 and 2 above, the trial court followed the Texas law."

Fireman's Fund Insurance Co. v. Wilburn Boat Co., 300 F.2d 631, 1962, 5th Circuit.

The appellant contends that the statement contained in "Endorsement No. 10" is a warranty. The Supreme Court of Texas in construing whether a statement in an insurance policy was a warranty, said:

" * * * that for a statement in a policy to constitute a warranty, the parties must have intended that the policy stand or fall on the literal truth or the falsity of the statement." Lane v. Travelers Indemnity Company, 391 S.W.2d 399 (Tex.Sup. 1965).

The Supreme Court then quoting from a former opinion, said that:

" * * * A warranty in an insurance contract is a statement made therein by the assured, which is susceptible of no construction other than that the parties mutually intended that the policy should not be binding unless such statement be literally true. * * * [Phoenix Assur. Co. v. Munger Imp. Cotton-Mach. Mfg. Co., 92 Tex. 297, 49 S.W. 222 at 225, Supreme Court (1898)]."

The court goes on to say that in determining whether a particular statement is a warranty or only a representation, the entire policy will be considered *and construed to prevent a forfeiture.* Citing authorities. Lane v. Travelers Indemnity Company, supra.

"Endorsement No. 10" has no express declaration that it is a warranty. The endorsement is not a limitation of cov-

erage, for in order to be a limitation, the language used must be positive and unequivocal, not as to a condition for insuring the property but as to the insurance coverage afforded by the insurer. See Firemen's Ins. Co. v. Alonzo, 246 S.W. 82, (Tex. Comm'n App.1923, opinion adopted). Here the policy of fire insurance does not contain any provision that it is to be effective only if this endorsement (No. 10) is complied with. It does not contain a statement to the effect that a violation of this endorsement will render the policy void. There is no word in the endorsement or anywhere in the insurance policy that fire insurance coverage does not extend and/or will cease beyond fifty miles from the principal place of garagement. This endorsement is no more than an agreement. It is not a limitation of coverage or a warranty. If the insured had been doing custom farming beyond the fifty mile limitation and because of such extra work, or hazards, or for any cause that might have been found by the jury to exist, that caused or contributed to the fire, then "Endorsement No. 10" would have been applicable. The jury's answer that "Endorsement No. 10" was material to the risk does not constitute a complete defense to the insurer nor does the appellant make any such point on this appeal. Almost any representation can be material. It is obvious that a fact can be material to the risk without its contributing to bringing about the destruction of the insured property. Fireman's Fund Insurance Co. v. Wilburn Boat Co., supra, 300 F.2d at p. 644. As was said in Inter-Ocean Insurance Company v. Ross, 315 S.W.2d 71, 73, 74 (Tex.Civ.App. Ft. Worth, 1958): " * * it does not disprove that a fact may have been material to the risk because it had no actual subsequent relation to the manner in which the event insured against did occur." Since the use to which it was being put at the time of the loss did not contribute to the fire, Art. 6.14 is applicable. Austin Building Co. v. National Union Fire Ins. Co., 403 S.W.2d 499 (Tex.Civ.App., Dallas, 1966 ref'd n. r. e.). The article, being a remedial statute, is to be liberally construed.

Even if "Endorsement No. 10" was considered to be ambiguous it would have to be resolved in favor of coverage. 13 Appleman Insurance Law and Practice, § 7401. Construing the provision in such a way as to prevent a forfeiture we hold that the breach of this endorsement could have contributed to the loss but did not. Lane v. Travelers Indemnity Co., supra. This endorsement is not in any way similar to those provisions where the courts have held that the breach of which could not have contributed to the loss. Appellant's first and fourth points are overruled.

Appellant's fifth point complains of the trial court's entering judgment in favor of Carnes where Carnes failed to file a sworn proof of loss as required by the policy and there was no waiver or estoppel as to such condition. Quoting substantially from appellant's brief the facts developed and undisputed are as follows: Carnes' cotton picker burned on the night of September 6, 1963. Carnes drove back to Victoria that night and the next morning he called the insurance company's agent to report the fire. The insurance company's adjuster took Carnes' statement on September 10, 1963. About October 2, 1963 the insurance company's adjuster called Carnes to advise that the covered cotton picker had been examined. Within the next few days the adjuster contacted Carnes and offered to have a dealer in Snook, Texas (near the site of the fire) fix the picker at a cost of some $5,200. A day or two later the adjuster offered to have the picker repaired at a cost of some $5,400, or to pay that amount to Carnes. The adjuster testified that he then offered Carnes a tractor and basket which were the major parts of the picker, but Carnes declined, stating he wanted $8,000. Carnes stated that unless he got a better offer he was going to turn the claim over to his attorneys. These negotiations were in late October, 1963. Within a few days Carnes did turn the claim over to his attorneys. This was done within some two months after the fire. After that there was

no more contact between Carnes and any representative of the insurance company.

No proof of loss form was furnished to Carnes and he was not requested by the insurance company to file a proof of loss. Carnes was not asked to supply any information other than the statement which had been taken by the adjuster a few days after the fire. However, the adjuster believed that he had told Carnes that a proof of loss would have to be filed when the case was settled. The case was not settled and no mention was made of what must be done if the claim was not settled.

 When negotiations ended between the adjuster and Carnes the only dispute was the amount of the loss. The adjuster never denied Carnes' claim. Apparently the adjuster did not learn of "Endorsement No. 10" until after the suit against the insurance company had been filed. The policy required as a condition that a sworn proof of loss be filed within ninety days after any loss occurred. There were no requests for a special issue nor were there any findings that the proof of loss was waived. It is appellant insurance company's contention that the filing of a proof of loss, unless waived, was a prerequisite to Carnes' suit upon the policy. Citing Commercial Union Assur. Co. v. Preston, 282 S.W. 563 (Tex.Sup.1926). In view of the fact that it was undisputed that the adjuster told Carnes that he would have to file a proof of loss when the case was settled and this event having not occurred, we hold that the company's knowledge of the loss and undisputed conditions existing prior to the time suit was filed was sufficient evidence not contradicted to conclusively establish that the company waived the proof of loss. Employers Mut. Cas. Co. of Des Moines, Iowa v. Nelson, 351 S.W.2d 278 (reversed on other grounds); 32 Tex.Jur.2d pp. 589–599, § 385. See also Anchor Casualty Company v. Bowers, 385 S.W.2d 568, 570 (Tex.Civ.App.—Houston 1964), (reversed on other grounds 393 S.W.2d 168 and 170, Sup.Ct.).

As additional reasons for overruling appellant's fifth point see Art. 5546, Vernon's Ann.Tex.St. This statute renders void provisions in a contract of insurance that require notice to be given as a condition precedent to the right to sue thereon where the stipulation is unreasonable or fixes the time within which notice is required to be given at a less period than ninety days. See Taber v. Western Union Telegraph Co., 104 Tex. 272, 137 S.W. 106, 34 L.R.A.,N.S., 185 (1911); Fire Ass'n of Philadelphia v. Richards, Tex.Civ.App., 179 S.W. 926. We have considered appellant's other points. They are overruled.

Judgment of the trial court is affirmed.

GREEN, C. J., not participating.