CITY OF AUSTIN ET AL. v. JOHN D. McCALL.

No. 1110.   Decided June 9, 1902.

**1.—City Charter—Power to Purchase Water and Light Plant.**

Paragraph 46 of section 70 of the special charter of the city of Austin, authorizing the city to create a system of water works and electric lighting, is not inconsistent with nor repealed by section 103 of said charter, which imposes upon the water and light commission created for the city the power to receive, manage, and maintain such plant, but not to construct or purchase one, and the latter section does not transfer the power to make such purchase from the city council to the commission.   (Pp. 573, 574.)

**2.—Same.**

Paragraph 46 of section 70 of the charter of the city of Austin, prescribing specifically the plan and manner in which it authorizes the city to construct water works, etc., can not be construed as authorizing it to acquire such plant in any other manner, as, by purchase of a system previously constructed by private parties.   (P. 574.)

**3.—Constitution—Act—Subject Not Embraced in Title.**

The amendment of September 21, 1901, to the special charter of the city of Austin, authorizing it, by section 33, to pledge its revenue to the extent of one-fourth of one per cent of taxable values, to meet indebtedness to be created by the purchase of the water and light plant owned by private parties, is not unconstitutional as embracing a subject not expressed in the title of the bill. (Pp. 574-576.)

**4.—Same—Statute—Construction—Caption of Act.**

It is permissible to refer to the body of an act in order to obtain the proper construction of the language of its caption. The description of the bill in its title as an amendment of the charter "so as  *  *  *  to authorize said city to pledge not exceeding one-fourth of its general revenue for the payment and security of judgments and claims herein specified" means judgments and claims specified in the body of the act, which authorizes the purchase of a water and light plant, not in its title merely, where none were specified.   (P. 575.)

**5.—Charter—Implied Powers—Purchase of Water and Light Plant.**

The power given the city of Austin, by the amended section 33 of its

charter, to pledge certain revenues for the payment of a debt for the purchase of a water and light plant, conferred an implied power on the city to make such purchase. (P. 576.)

**6.—Constitution—Creating Municipal Debt—Compromise.**

The purchase by the city of Austin of the water and light plant owned by a private corporation for $175,000, created a debt to that amount which could not be contracted without providing a sinking fund for its retirement, as required by article 11, section 5, of the Constitution, though such purchase was part of an arrangement for compromising other existing debts and judgments held by the water and light company against the city. (Pp. 576, 577.)

**7.—Corporation—Illegal Contract—Injunction by Taxpayer.**

A taxpayer in a municipal corporation may enjoin the making of an illegal contract by its officers to create a debt against it. (P. 577.)

Error to the Court of Civil Appeals for the Third District, in an appeal from Travis County.

McCall sued the city of Austin and its mayor and city council to enjoin them from entering into a contemplated contract. The injunction was granted, was made perpetual on final hearing, and on appeal by defendants the judgment was affirmed, whereupon appellants obtained writ of error.

*V. L. Brooks* and *Clarence H. Miller*, for plaintiff in error.—1. The facts alleged in plaintiff's first amended petition do not show that plaintiff was entitled to the relief sought, and the general demurrer should have been sustained. The Court of Civil Appeals erred in not so holding. The plaintiff nowhere avers in his petition, as he should do to properly state a cause of action, what the excess of his taxes would be, if the alleged illegal contract with the water company is made, nor does he allege any facts from which the excess may be arrived at by a mathematical calculation. Altgelt v. City of San Antonio, 81 Texas, 436.

2. The suit for an injunction is premature and should be dismissed, because appellee alleges that the proposed purchase money is to be paid out of the city's general revenues, and if the allegation is true, appellee can enjoin the illegal diversion of public funds as soon as the council seeks to appropriate for such purchase money any part of such funds. Dodge v. City, 57 Iowa, 567; Searle v. Abraham, 73 Iowa, 508; Stevens v. St. Mary's School, 144 Ill., 343; Des Moines Gas Co. v. City, 44 Iowa, 510; Blanc v. Meyer, 59 Texas, 89; Red v. Johnson, 53 Texas, 284; Chisholm v. Adams, 71 Texas, 682; Land Co. v. Board, 80 Texas, 489; 2 Dill. Mun. Corp., sec. 914, p. 1107, sec. 611, note 1, sec. 457; Ewing v. St. Louis, 5 Wall., 413; Hannewinkle v. Georgetown, 15 Wall., 547.

3. The purchase money for the plant is to be paid, appellee alleges, out of the city's general revenue, and the city council has the absolute discretion of levying and collecting the full 1 per cent general revenue tax, whether or not the proposed contract is made. Therefore, appellee suffers no injury from the mere making of the illegal contract, and his remedy, if the contract is illegal, is to enjoin the council as soon as it

seeks to appropriate any part of the general revenue to an illegal purpose. The Court of Civil Appeals erred in not so holding. Charter of Austin, sec. 33; Altgelt v. City, 81 Texas, 436; Strohm v. City, 47 Iowa, 46.

4. The suit for an injunction is premature and should be dismissed, because the payment of all moneys due by the city under the proposed contract is to be secured either by judgment of the Federal court or by pledge of the general revenue of the city; if the former, appellee can intervene in that court and prevent the consummation of the proposed contract, and if the latter, he can at the proper time resist the collection of any taxes that may be levied upon his property for the purpose of carrying out the illegal contract. The Court of Civil Appeals erred in not so holding.

5. The proposed contract was an agreement, not to create a debt, but to compromise existing disputed claims against the city, and the council had the power and the exclusive privilege of considering and adopting such terms of compromise, not prohibited by law, as it saw fit. The Court of Civil Appeals erred in not so holding. Tied. Mun. Corp., sec. 142; 1 Dill. Mun. Corp., secs. 477, 478.

6. The city council had the power, under the law, independently of the charter amendment of September 21, 1901, to purchase the water and light plant in question. The Court of Civil Appeals erred in not so holding. Charter of Austin, sec. 32, sec. 70, par. 46; Suth. Stat. Const., 447, 451, 575; 1 Dill. Mun. Corp., secs. 85, 146; Livingston v. Pippin, 31 Ala., 543; Ketchum v. City of Buffalo, 14 N. Y., 360; Smith v. City, 70 N. C., 14; Austin v. Railway, 45 Texas, 266; Higgins v. Rinker, 47 Texas, 401; Laughter v. Seela, 59 Texas, 183; Railway v. Rambolt, 67 Texas, 657.

7. The city council had the power under the charter amendment of September 21, 1901, to pledge not exceeding one-fourth of the city's general revenue for the payment of money to become due by virtue of the terms of any contract which might be made by the proper city authorities for the purchase of the plant in question. The Court of Civil Appeals erred in not so holding.

8. The caption of the Act of September 21, 1901, was sufficient to express the subject of authorizing the council to pledge not exceeding one-fourth of the general revenues for the payment and security of money to become due by virtue of any contract which might be made by the city for the purchase of the plant in question. The Court of Civil Appeals erred in not so holding. Gunter v. Land Co., 82 Texas, 496; Cattle Co. v. Baker, 56 S. W. Rep., 756; Morris v. State, 62 Texas, 741; Railway v. Smith, 54 Texas, 12; Tadlock v. Eccles, 20 Texas, 792.

9. The proposed contract will not create a debt against the city without, at the same time, making provision to assess and collect annually a sufficient sum to pay the interest thereon and create the necessary 2 per cent sinking fund, because (1) it does in fact make such provision, and (2) no new debt is created, but a compromise of existing claims, at less.

than their face value, is effected, and no such provision has to be made. The Court of Civil Appeals erred in not so holding.

10. The proposed contract does not pledge over one-fourth of the general revenue, nor the payment of any sums over such one-fourth, out of said revenue for future years, but on the other hand the pledge of the general revenue is in express terms limited "to the extent permitted by charter." The Court of Civil Appeals erred in not so holding.

11. The proposed contract is legal to the extent of pledging one-fourth of the general revenue towards the payment of the obligation assumed by the city, and if illegal as to any excess over one-fourth, the injunction should have been directed against the pledging of such excess and not against the payment, or a contract to pay any part of the general revenue. The Court of Civil Appeals erred in not so holding.

12. The final decree in the cause is too broad in prohibiting the city from purchasing the plant in question or compromising its differences with the water company on any terms that involved the payment of any part of the general revenue of the city; the injunction should be limited to definite specified contemplated acts of the city council and directed against its illegal assumption or exercise of power. The Court of Civil Appeals erred in not so holding.

13. The city council, if it did not previously have the power under the law to purchase the plant in question upon the terms proposed, obtained that power in the charter amendment of September 21, 1901. The Court of Civil Appeals erred in not so holding.

14. It does not appear from the facts alleged in the pleadings or proven on the trial that the trial court had any jurisdiction over the subject matter of this suit. The Court of Civil Appeals erred in not so holding. Winstead v. Evans, 33 S. W. Rep., 581; Lazarus v. Swafford, 39 S. W. Rep., 389; Dean v. State, 88 Texas, 296; Smith v. Kitchen, 40 S. W. Rep., 42.

*S. R. Fisher, D. W. Doom,* and *T. B. Cochran,* for defendant in error. This was not a suit to enjoin the collection of an illegal tax, but a suit to enjoin an illegal diversion of public funds by preventing the making of an illegal and void contract, having such end in view. Altgelt v. City of San Antonio, 81 Texas, is clearly distinguishable. A different rule prevails where it is sought to enjoin an illegal expenditure of public money. Crampton v. Zabriskie, 101 U. S., 601; Davenport v. Kleinschmidt, 6 Mont., 502; Roberts v. City of Louisville, 92 Ky., 95; Terrett w. Sharon, 34 Conn., 108; New London v. Brainard, 22 Conn., 552; Newmeyer v. Railway, 52 Mo., 84, 89; The Liberty Bell, 23 Fed. Rep., 843; Sackett v. City of New Albany, 88 Ind., 473; Mayor, etc., v. Gill, 31 Md., 375, 392; Merrill v. Plainfield, 45 N. H., 126; Howard v. Smith, 91 Texas, 8; Robertson v. Breedlove, 61 Texas, 316; 2 Beach on Injunc., secs. 1286, 1287, 1290, and in particular 1300; 2 Dill. Mun. Corp., 4 ed., secs. 914-918; 2 Dill., secs. 921, 922; 2 High on Injunc., 3 ed.,

secs. 793, 1237, 1241, 1262; 1 Pom. Eq. Jur., 2 ed., secs. 258, 260, page 347, and note 1, page 348; Id., sec. 270.

The second and third assignments, suggesting that the suit was premature, present the question for the first time and in this court; no such question was raised in the Court of Civil Appeals or ruled upon by it. If presented to that court at all, it was in the motion for rehearing. The authorities already cited show that the position taken is wrong and that the suit was not premature. This court has held (Witt v. Kauffman, 25 Texas Supplement, 384; Glass v. Smith, 66 Texas, 548; see also Day Co. v. State, 68 Texas, 527, 536, 537, 538) that the use of void judgments may be enjoined. Then why not enjoin void contracts?

There is nothing to show the existence of any disputed claim beyond April 13, 1902. The contract between the water company and the city, of date April 13, 1882, does not, by its own terms, extend for twenty years from April 13, 1902, but at most provides that it shall be extended for a further term of twenty years, and the damage that might accrue to the water company on account of failure of the city to extend the contract would not necessarily be $12,100 per annum and would not constitute rentals (which might or might not be earned during such future period), disputed claims, and the subject of compromise or adjustment; but, if this be not correct, the claim of $12,100 per annum for twenty years from and after April 13, 1902, is not a debt, but at most a prospective contingent liability, while to pay it all or a great part of it at once, does and will create a debt for the payment of which provision would have to be made.

There was and can be no contention that the city rests under obligation, arising out of the contract of April 13, 1882, to buy the plant of the City Water Company or of the Austin Water, Light and Power Company, as its alleged successor; therefore there was and is nothing to compromise with reference to that matter.

There is nothing in the record to justify the contention that the acquisition of a water and light plant was no material part of the proposed contract, but a mere incident, as it were, to an adjustment of differences, or that money was not to be paid for such a plant, but only for a settlement of a debt or controversy between the city and the City Water Company or the Austin Water, Light and Power Company.

It is further maintained by defendant in error that the proposed contract is indivisible, the proposed purchase of the plant and the settlement of the judgments and claim for hydrant rental under the contract of April 13, 1882, being indissolubly connected, with nothing in the contract to indicate or suggest any intention on the part of either party to sell the plant to the city without also settling judgments and claims, or to settle judgments and claims without also selling the plant. It is clear, even if it be conceded that the council has the power under certain conditions to compromise municipal indebtedness, that it can not join a legal compromise to an illegal contract and thus escape the consequences; therefore the contract, in its entirety, must fail.

The Act of September 21, 1901, from which alone must arise the power to make the proposed contract, in so far as it seeks to authorize the purchase by the city of a waterworks plant and the payment of claims and judgments, is void, the caption embracing more than one subject, and, in its enumeration of subjects or objects, not embracing the power to purchase a waterworks plant, and the act in its body seeking to confer such power and to pledge as much as one-fourth of the general revenue for purposes not mentioned in the caption. Charter, April 3, 1891, Spec. Laws 1891, page 101; Amended Charter of 1897, Spec. Laws 1897, pages 2-5; Charter, April 13, 1901, Spec. Laws 1901, page 60; Amendment, September 21, 1901, Spec. Laws 2d Spec. Sess., page 12; Const., sec. 35, art. 3; Gunter v. Land Co., 82 Texas, 496; Cooley Const. Lim., 6 ed., 172, 177, 178; Bable v. People, 64 Am. St. Rep., 64, and note.

If, under any circumstances, said act could be held valid, the title thereof authorized the city to pledge not exceeding one-fourth of its general revenue for the payment and security of existing judgments and claims therein specified, and did not authorize the creation of a new claim,—the authority to pay a debt or claim being essentially different from the power or authority to create such an obligation.

It is clear that no present provision whatever for the sinking fund for $175,000, the purchase price of plant, was made or authorized to be made. The resolution in terms shows that no payments of any kind are to be made upon the principal of the purchase price until all the other claims are paid.

The contract enjoined is invalid (a) because it seeks to pledge for future years a portion of the general revenue of the city in excess of an amount that might be realized by the levy and collection of a tax of one-fourth of 1 per cent; (b) because it seeks to create an indebtedness without at the same time making provision by taxation to raise annually a sufficient sum to discharge the interest and provide at least 2 per cent of the principal as a sinking fund; and (c) because it is conclusively shown that the city has reached the limit of its taxing powers, and that one-fourth of 1 per cent is not sufficient to make provision for the interest and the sinking fund; the debt-creating power of a municipal corporation being limited by the Constitution to its taxing power—the power to contract being limited by the power to tax. Charter City of Austin, Act of April 13, 1901; Const., sec. 5, art. 11.

If the fact asserted in the tenth assignment be true, then there is no provision for the payment of the $25,000 debt per annum, for one-fourth of the general revenue available will not produce the $25,000. The general revenue is $90,300; one-fourth, or $22,575, is set apart for streets and bridges, leaving $67,725, one-fourth of which would be equal to $16,931.25; or, if the one-fourth is to be taken from the whole of the 1 per cent, then there would be, as heretofore shown, only $22,575 and not $25,000. Again, if the charter did not authorize pledging sufficient general revenue for the purposes of the contract, and the above quoted reference to the charter should be held to overrule the specific

pledge of a definite sum in another part of the resolution, then no provision was made for paying sinking fund..

What we have heretofore said would seem to be sufficient answer to the eleventh assignment. The debt created is certainly $175,000, and no part of the principal thereof can, under the terms of the contract, be paid until after the lapse of six or seven years, thereby making no provision whatever for sinking fund. The contract is indivisible—the agreement to settle and the agreement to buy being interwoven and mutually dependent; if it is void as to a part, it is void as to the whole.

The twelfth assignment asserts that the final decree is too broad. If this be true, the Court of Civil Appeals reformed the decree in that respect, but it is respectfully submitted by defendant in error that in this the Court of Civil Appeals erred, and that a reading of the decree will disclose that all clauses operating upon any of the defendants or enjoining specific acts are limited to a prevention of acts in furtherance of the illegal proposed contract, and impose no restrictions upon such acts when attempted for some other purpose, whether legal or illegal.

The charter amendment as to purchase of the plant and appropriation of a part of the general revenue for its payment, if not invalid for the reasons insisted upon by defendant in error, does not name the city authority to make the purchase, but simply gives the council power to pledge the revenue for a purchase lawfully made through the water and light commission. If the amendment authorizes the council to purchase, certainly the caption does not cover it.

By the Constitution and laws the district court is given jurisdiction in all cases in which jurisdiction is not expressly given to some other court, and it not having been made to appear by pleading and evidence that some court other than the district court had jurisdiction, the question of jurisdiction does not arise in this case. Const., art. 5, last clause of sec. 3; Rev. Stats., arts. 1099, 1107; Graham v. Roder, 5 Texas, 141; Sherwood v. Douthit, 6 Texas, 224; Ellett v. Powers, 8 Texas, 113; Bridge v. Ballew, 11 Texas, 269; Harrell v. Hill, 15 Texas, 270; Dwyer v. Bassett, 63 Texas, 274; McDannell v. Cherry, 64 Texas, 177; Buchanan v. Bilger, 64 Texas, 589; Ratigan v. Holloway, 69 Texas, 468; Smith v. Kitchens, 40 S. W. Rep., 42.

This was not a suit to enjoin the collection of taxes which would accrue against plaintiff's property but to enjoin the making of a contract which was of the value of at least $175,000, and concerning which the county court could not have jurisdiction. Same authorities.

Under the charter of the city of Austin taxes assessed are a special lien on the real property against which they are assessed, and plaintiff's property being of the value of $5000, that value, or the value of the real property, is the amount involved rather than the amount of taxes which might be claimed against it, there being no pleading or evidence to show that said real property was not of greater value than $500 and every intendment being in favor of the jurisdiction. Sec. 44 of the Charter of the City of Austin, approved April 13, 1901; Marshall v. Taylor, 7

Texas, 235; Smith v. Giles, 65 Texas, 341; Cotulla v. Goggan, 77 Texas, 32; Dwyer v. Bassett, 63 Texas, 274.

The district court had jurisdiction without regard to the amount in controversy, the pleadings and evidence showing that plaintiff owned real property subject to taxation by the city of Austin, which taxes when assessed would be a lien on said real property and which could only be enforced by suit in the district court. Const., art. 5, sec. 8; Rev. Stats., 1895, arts. 1098, 1099, 1107; Red v. Johnson, 53 Texas, 284; Anderson County v. Kennedy, 58 Texas, 616; Lane v. Howard, 22 Texas, 7; Hargrave v. Simpson, 25 Texas, 396.

If the amount of plaintiff's taxes involved is to be considered as the test of jurisdiction, then his taxes for one year for general revenue at 1 per cent would be $50, which would not be within the jurisdiction of the county court, and if the amount of his taxes for the whole term the contract would have to run would be the amount in controversy, then the amounts to be paid were $175,000, with interest at 3 per cent per annum from the 1st day of October, 1901, and $39,925, with interest at 6 per cent per annum from the 30th day of May, 1899, and $25,000, with interest at 6 per cent per annum from the — day of May, 1901, and at $25,000 per annum it would take more than eleven years to pay them, and that would involve the plaintiff to the amount of $550, which would still be within the jurisdiction of the district court.

If the amount of one-fourth of the general revenue per annum which was to be pledged should be the test of jurisdiction, then one-fourth of plaintiff's annual general revenue tax would be $12.50 per annum and for the whole life of the proposed contract would not amount to $200, so that in no event would the county court have jurisdiction.

BROWN, Associate Justice.—On the 13th day of April, 1882, the city of Austin, a municipal corporation organized under special act of the Legislature of Texas, entered into a contract, by ordinance duly passed by the city council, with the Austin Water, Light and Power Company of the city of Austin, a corporation organized under the laws of the State of Texas, whereby the right and privilege were granted to the company to furnish water to the city of Austin for the period of twenty years, at the rate of $12,100 per annum. This contract was carried out by both parties for a number of years, when the city of Austin, having constructed a water and light plant of its own, refused to take water from the Austin Water, Light and Power Company, whereupon suits were filed in the United States Circuit Court at various times, which resulted in large judgments against the city, amounting to $65,000; and there existed a claim of the water, light and power company against the city for water furnished, and for which claim no suit had been instituted or judgment rendered. The judgments and the claim aggregated $82,317.19. On September 30, 1901, the mayor and the city council of Austin passed a resolution whereby the city agreed to purchase the plant of the Austin Water, Light and Power Company at

the price of $175,000, and to pay all judgments and claims against the city for water furnished prior to that date, if the pending suits should be decided against the city. The amount was to be paid by the city in installments not to exceed $25,000 per annum, and to be applied (1) to the extinguishment of the interest for each year on the whole sum of purchase price, judgments, and claims against the city; (2) to the payment of the principal and interest of the judgments and claims of the water and light company against the city; and (3) to the payment of the purchase price of the plant.

The taxable value of all property in the city of Austin, as shown by the tax rolls for the year 1900, amounting to $9,030,000, the tax of one-fourth of 1 per cent upon the valuation would not yield $25,000.

The mayor and city council were proceeding to consummate the purchase of the plant under the contract made by the resolution before stated, when John D. McCall, a citizen and taxpayer of the city, owning property valued for taxation at the sum of $5000, obtained an injunction, enjoining the city of Austin and its mayor and city council from making the purchase under the said contract. The allegations of the petition for injunction, so far as necessary, will be stated in the opinion, and the pertinent provisions of the charter of the city of Austin will be referred to and stated.

The case was submitted to the district judge upon an agreed statement of the facts, and a judgment was entered perpetuating the writ of injunction, which judgment was affirmed by the Court of Civil Appeals.

Counsel for the city claim that power to purchase the water, light and power plant is conferred upon the city by section 70, paragraph 46, of its charter, from which we quote as follows: "To erect, construct, build, operate, and maintain a water and electric light system to supply the city and its inhabitants with water and electric lights, by constructing and maintaining a reservoir of water in and about the channel of the Colorado River, within and without the city limits, by means of the dam across the same, as the same is now constructed, to serve as a reservoir and to furnish power to operate an electric light system, and build such other reservoirs as may be necessary, at such an elevated point within and without the city, as may be necessary to supply the higher portions of the city with water." The defendant in error contends that the portion of the charter before quoted was repealed by section 103 of said charter, which is in these words: "The board (the water, light and power commission) and their successors shall take and hold possession of, and have and receive general and exclusive supervision, management, and control of the system of waterworks, electric lights and power plants of the city of Austin, and all property, funds, and business belonging or appertaining thereto; and it shall have the exclusive power, and it is charged with the duty, as a branch of the city government, to furnish all water, light, and power adequate to the requirements of the city of Austin for public use, * * * and shall have the power to improve, extend, add to, or change said system under its control, as the board may

from time to time determine, and to dispose of all property not needed for the proper management of the plant and system." The section last quoted does not confer upon the water and light commission any power which is inconsistent with that conferred upon the city council by section 70, paragraph 46, as above quoted. The city, by its charter, is empowered to construct, operate, and maintain a water and electric light system, which is entirely consistent with the provisions of section 103, which confers upon the water and light commission the authority to receive and have exclusive supervision, management, and control of the system of waterworks, electric lights and power plants of the city of Austin, and all property, funds, and business belonging or appertaining thereto; also the power to construct wells, canals, and such improvements as it might deem needful for properly carrying on the business in pursuance of its powers as such board. The city council represents the city,—having power to contract and to perform agreements. The water and light commission is an instrument created by the law, by which the city of Austin performs the duties and exercises the powers conferred upon the water and light commission. The commission is not a corporate body. The authority of the water and light commission is confined to such plants as it may receive from the city government. It acts for the city, is not authorized to buy, nor is it necessary for the exercise of the powers granted that it should acquire another plant. We conclude that the water and light commission has no power to construct or to purchase a plant. Its powers relate to and are confined to a plant or plants provided by the city.

We recur to the question, does section 70 of its charter confer upon the city authority to purchase the Austin light and power plant? The terms of the statute by which the city is authorized to construct waterworks are so definite and prescribe so specifically the place where the plant shall be constructed, and the manner in which it shall be built, that it can not be construed as authorizing the city to acquire such plant in any other manner. An implied power must arise out of, and be appropriate to the execution of, an express power; but the execution of the power to construct the waterworks by means of a dam on the Colorado River does not require the purchase of a plant already constructed. We therefore conclude that the city of Austin did not have authority to make the contract, unless it is given by the amendment of September 21, 1901.

The amendment to the charter of the city of Austin was entitled as follows: "An act to amend sections 33, 34, 36, 37, and 63 of an act entitled 'An act to incorporate the city of Austin, grant it a new charter and fix its bounds,' approved April 13, 1901, so as to provide for the refunding of its bonded debt and further define its powers and duties relative to its bonded indebtedness, to define the powers of said city in reference to the streets and highways within its corporate limits, and to authorize said city to pledge not exceeding one-fourth of its general revenue for the payment and security of judgments and claims herein specified." Section 33 of the charter, as far as it bears upon the question, is

as follows: "A part of said general revenue, not to exceed one-fourth of one per cent of the total taxable values as aforesaid of said city may, by the city council, be appropriated and pledged for the liquidation, settlement and payment of the money to become due by virtue of the terms of any contract which may be by said city made for the purchase of any water, light or power plant at present owned and operated in said city by private persons or corporations." The defendant in error insists that this amendment is in conflict with article 3, section 35, of the Constitution of this State, which is in these words: "No bill * * * shall contain more than one subject, which shall be expressed in its title." The rule for construing that provision of the Constitution is aptly expressed in Morris v. Gussett, 62 Texas, 741, as follows: "The tendency of the decisions is to construe the constitutional provisions on this subject liberally, 'rather than to embarrass legislation by a construction whose strictness is unnecessary to the accomplishment of the beneficial purposes for which it was adopted.'" It is not contended that the caption of this bill would not be sufficient if it omitted the qualifying clause "so as," etc.; but it is claimed that this clause of the caption limits the law to the subjects mentioned in the title. Granting this to be correct, does not the clause of the caption embrace the subject matter of the amendment of section 33? If we read the caption as it applies to section 33, it would be expressed thus: "An act to amend section 33 * * * of an act entitled 'An act to incorporate the city of Austin, * * *' so as to authorize said city to pledge not exceeding one-fourth of its general revenue for the payment and security of judgments and claims herein specified." The words "herein specified" can not refer to the caption of the act, because it specifies no claims, but it refers to the body of the act as specifying claims which are included in the caption. Looking to the body of the amendment, we find that the only claim mentioned is such as might arise out of a contract the city might make "for the purchase of any water, light and power plant at present owned and operated in said city by private persons or corporations." It is legitimate in the construction of a law to refer to the caption for explanation (Sutherland, Statutory Construction, section 210), and it is equally permissible in the construction of the caption to refer to the body of the act. Otoe County v. Baldwin, 111 U. S., 16. An act of the Legislature of the State of Nebraska was entitled as follows: "An act to enable counties, cities, and precincts to borrow money on their bonds, or to issue bonds, to aid in the construction or completion of works of internal improvement in this State." In the body of the act authority was given to the counties, cities, and precincts to issue bonds in aid of improvements, not limiting them to those situated within the State of Nebraska. It was contended that the subject of the statute was not embraced in the terms of the caption and that the law was void under the Constitution, which contains this provision: "No bill shall contain more than one subject, which shall be clearly expressed in the title." Taken alone, the plain and grammatical construction of the phrase "in

this State" was to qualify the preceding subject "works of internal improvement," but the bill transposed the language and authorized counties, cities, and precincts "in this State" to issue bonds, etc. The Supreme Court of the United States, in passing upon the question of the validity of that law, looked to the body of the act for the construction of the caption, and determined that the proper interpretation of the caption was to apply the qualifying phrase "in this State" to counties, cities, and precincts, as in the body of the law. That court said: "It would, we think, be a strained construction to hold that the title of the act is to be so interpreted as to be limited to works situated in the State, when such limitation does not exist in the body of the act, and when the words 'in the State,' in the title, may fairly be regarded as applicable to the prior words 'counties, cities, and precincts,' to which words they are applied in the body of the act." The reason upon which the constitutional requirement rests is to give notice of the object of the act. This is done in this instance by reference to the body of the bill, and satisfies the demands of the Constitution.

Section 33 of the charter of the city of Austin, as amended, empowers the city to pledge one-fourth of its general revenue for the payment of any money that might become due for the purchase by the city of the water, light, and power plant. It is true the power to purchase is not expressed in so many words, but it is so clearly implied that the mind instinctively supplies it in reading the clause of the charter. The city could not provide for the payment of money upon a contract made in the purchase of the plant unless the city had made the purchase; therefore the power to purchase is necessary to the execution of the power expressly conferred. This leads to the conclusion that the power to purchase the water plant in question was conferred upon the city by the amendment to section 33 before quoted.

Article 11, section 5, of the Constitution of this State contains this limitation upon the power of cities to create debts: "No debt shall ever be created by any city unless at the same time provision be made to assess and collect annually a sufficient sum to pay the interest thereon and create a sinking fund of at least two per cent thereon." The defendant in error contends that the contract proposed to be made between the city and the Austin Water, Light and Power Company is violative of the foregoing provision of the Constitution, in this, that it makes no provision for sinking fund upon the debt. The plaintiff in error insists that no debt will be created, but undertakes to show that the $175,000 originates in a compromise of a claim in favor of the water, light and power company against the city on a liability which might accrue in the future. It is plain to us that a purchase of the water plant for a consideration of $175,000 creates a debt within the meaning of the Constitution, and that such debt can not be lawfully created unless a provision be made for the sinking fund of not less than 2 per cent. The terms of the proposed contract specifically exclude any sinking fund upon this debt,— for it appropriates to the payment of the existing claims against the

city all of the annual payments to be made by the city, except the interest upon the $175,000. No argument or reasoning could elucidate so plain a proposition as that. We hold that the contract as proposed would be in violation of the Constitution and that it should be enjoined and prohibited.

We find no error in the rulings complained of by the first five assignments in the application, and do not find it necessary to discuss them, except the fourth, by which it is asserted that a taxpaying citizen of a municipal corporation can not enjoin the making of an illegal contract by the corporation. The citizen need not wait until an unlawful contract has been consummated, but may prevent the wrongful act by injunction. Crampton v. Zabriskie, 101 U. S., 609. In that case Justice Field stated the law in this language:

"Of the right of resident taxpayers to invoke the interposition of a court of equity to prevent an illegal disposition of the moneys of the county, or the illegal creation of a debt which they in common with other property-holders of the county may otherwise be compelled to pay, there is at this day no serious question. The right has been recognized by the State courts in numerous cases; and from the nature of the powers exercised by municipal corporations, the great danger of their abuse and the necessity of prompt action to prevent irremediable injuries, it would seem eminently proper for courts of equity to interfere upon the application of the taxpayers of a county to prevent the consummation of a wrong, when the officers of those corporations assume, in excess of their powers, to create burdens upon property holders. Certainly, in the absence of legislation restricting the right to interfere in such cases to public officers of the State or county, there would seem to be no substantial reason why a bill by or on behalf of individual taxpayers should not be entertained to prevent the misuse of corporate powers. The courts may be safely trusted to prevent the abuse of their process in such cases."

It is ordered that the judgments of the District Court and of the Court of Civil Appeals be and the same are hereby reversed, and this court proceeding to enter the judgment that should have been entered by the District Court, it is ordered that the temporary injunction issued herein be and the same is hereby dissolved in all respects, except in so far as it restrains the city council and officers from entering into the proposed contract, and in this respect it is perpetuated, enjoining and restraining the said city council from entering into said contract with the Austin Water, Light and Power Company; but this shall not be construed to prevent the purchase of the plant under a contract made in conformity to this opinion. It is ordered that plaintiff in error recover from defendant in error all costs of the Court of Civil Appeals and this court, and that defendant in error recover of the City of Austin the costs of the District Court.