## OSBORNE v. KEITH et al.
### No. 4126.

Court of Civil Appeals of Texas. Beaumont.
April 29, 1943.

Rehearing Denied Sept. 16, 1943.

Smith, Smith & Boyd, of Beaumont, and Rutan & Phares, of Port Arthur, for appellant.

Shivers & Keith, of Port Arthur, and C. A. Lord, and Shelby Long, Co. Atty., both of Beaumont, for appellee.

WALKER, Chief Justice.

By written deed dated the 11th day of August, 1942, appellant, P. L. Osborne, purchased from David L. Coale, Jr., and others a tract of 16.67 acres of land in Jefferson County. The recited consideration was $1 and other valuable consideration. The actual consideration, including expenses incurred by appellant in making the purchase, exceeded $2,500. By his deed in writing, dated the 5th day of October, 1942, appellant conveyed to the State of Texas certain easement rights on and across this tract of land, giving the grantee the right, among others, to dig barrow pits on 7.7 acres of the land and to remove from it "source material" to be used by the grantee in improving a certain public road in Jefferson County. The recited consideration for this deed was $1 and other valuable consideration. The actual consideration was that Jefferson County, for the use of the State of Texas, bound itself to accept from appellant and to remove from the land not less than 40,000 cubic yards nor more than 55,000 cubic yards of "source material" for which Jefferson County bound itself to pay appellant the sum of twenty cents per cubic yard.

On the 23rd day of October, 1942, appellee R. M. Keith, as plaintiff, instituted this suit in district court of Jefferson County, suing "as a resident, taxpaying citizen of the said county and state. (Jefferson County and State of Texas) and for all other resident taxpaying citizens of said county and state similarly situated." Appellee named as defendants P. L. Osborne, Jefferson County, the individual members of

the Commissioners' Court of Jefferson County, the county judge, the county auditor, the county treasurer, and the county ·clerk. Appellee prayed for cancellation ·of the contract between appellant and Jefferson County, as above described, on allegations that appellant was the confidential ·agent of Jefferson County to purchase for it the "source material" involved in the contract between it and appellant, to be used by the State of Texas in improving the public road referred to above; that in violation ·of his trust relation with Jefferson County he purchased the property in his own name and that the legal effect of his purchase was that appellant held the title to the 16.67 acres of land in trust for Jefferson County. He prayed that the legal and equitable title be adjudged to be in Jefferson County and that the Commissioners' Court and the other public officers of Jefferson County, named in his petition as defendants, be enjoined from paying any of the funds of Jefferson County to appellant under his contract to sell to the State of Texas the source material as described above. Appellant and the other defendants named by him answered by special demurrers and general and special denials. Jefferson County did not pray for title to the land, nor did it plead tender to appellant of any money paid by him for the land, or of any portion of the purchase price.

On trial to a jury, judgment was rendered in favor of appellee against appellant for all the relief prayed for by him. In support of his judgment, the trial court made certain fact conclusions written into the face of the judgment. Since the facts so found by the court are basically the facts plead by appellee as constituting his cause of action, we quote as follows from the judgment as supplementing our statement of the nature of his petition:

"* * * after all parties had rested their respective cases, the plaintiff timely filed their motion for peremptory instruction, and the court after considering the pleadings, the evidence and the argument of counsel, and being fully advised in the premises, and being of the opinion that said motion should be in all things granted, the jury peremptorily was instructed to return a verdict for the plaintiff and against the defendants and each of them.

"Thereupon, the court did charge the jury in words as follows:

" 'You are charged that as a matter of law P. L. Osborne was at all times material to the matters involved in this suit, engaged and acting as the duly qualified right of way agent for Jefferson County, Texas, and that, while acting in a fiduciary capacity as such right of way agent, he acquired the legal title to the 16.67 acres ·Coale tract of land, and has at all times since held and now holds said legal title as trustee for Jefferson County, Texas, which said county owns the equitable title to the said land.

" 'Therefore, you are instructed to find for the plaintiff and against the defendants and each of them, and the form of your verdict will be handed to you by the clerk.'

"Thereupon, and on the 4th day of November, 1942, the same jury, pursuant to the instructions of the court as aforesaid, did return into court their verdict substantially the following words:

" 'We, the jury in the above numbered and entitled cause, pursuant to the instructions of the court, find for the plaintiff and against the defendants, and each of them.'

"Whereupon, the court being of the opinion that all matters of fact as well as law are with the plaintiff and against the defendants and each of them, and the court here and now finds all the material facts stated in the plaintiff's petition to be true; and the court, in addition to finding all of the facts necessary to support the judgment herein rendered, finds the additional facts specially in support of said judgment: (1) That the plaintiff is a resident taxpaying citizen of Jefferson County, Texas, and brings and maintains suit as a resident taxpaying citizen of said county and state, for himself, and for all other resident taxpaying citizens of said county and state similarly situated; (2) That ·Jefferson County, Texas, is an organized county and is a body politic organized under the laws of the state of Texas and domiciled at Beaumont, Jefferson County, Texas; (3) That Chas. A. Howell is the duly elected, qualified and acting County Judge of Jefferson County, Texas; (4) That R. ·C. Black, H. O. Mills, Louis Welch and F. J. Helmke, are the duly elected, qualified and acting County Commissioners of Precinct Nos. 1, 2, 3 and 4, respectively of Jefferson County, Texas; (5) That at all times material to this suit, the said Howell, County Judge as aforesaid, together with the said Black, Mills, Welch and Helmke, Commissioners as aforesaid, constituted the Commissioners Court of Jefferson County, Texas; (6) That W. W. Kent is the duly elected, qualified and acting County Treasurer of Jefferson

County, Texas; (7) That the said E. S. Foreman is the duly appointed, qualified and acting County Auditor of Jefferson County, Texas; (8) That the said defendant, Fred G. Hill, is the duly elected, qualified and acting County Clerk of Jefferson County, Texas; (9) That at all times material to this suit, P. L. Osborne was an employee of Jefferson County, Texas, and was regularly employed by said County and particularly the Commissioner of Precinct No. 2 thereof; (10) That it was the duty of the said Osborne and within the scope of his authority as an employee of said county and precinct to secure right of way for roads, streets, highways, and all of the necessary easements and conveyances wherein and whereby his said employer, Jefferson County, Texas could secure materials for roadbuilding purposes; (11) That by reason of the employment of the said P. L. Osborne, as aforesaid, by Jefferson County, Texas, and by virtue of the fiduciary relationship existing between the said Osborne and his said employer, the said Osborne on or about June 19, 1942, came into possession of facts and information as to the need of said employer, Jefferson County, Texas for a source from which material could be taken to apply upon the shoulders of said highway spur No. 136, and the said Osborne in the course of his employment as aforesaid, secured such knowledge and information; (12) that thereupon and on June 19, 1942, and at all times subsequent thereto, it became the duty of the said Osborne to use his best efforts and diligence to the securing of a suitable site for a barrow pit from which source material so needed by his said employer could be secured at the best possible price; (13) that during each and all of the working days from and after June 18, 1942, and including the date of the trial hereof and being every day, included in said period, except Sunday, the said P. L. Osborne was so regularly employed by Jefferson County, Texas, and received compensation for his said services; (14) That the said Osborne, after learning of the needs of his said employer, as aforesaid, and while acting as the right-of-way agent of said county and Precinct, did breach his duty to his said employer, and on or about July 15, 1942, the said Osborne secured in his own name an option of purchase upon the lands hereinafter described and known as the Coale tract of land; (15) that the said Osborne, after learning of all of the facts as aforesaid, did on or about August 28, 1942, receive from the then owners of the Coale tract of land, a general warranty deed conveying to him, the said Osborne, legal title to the said Coale tract of land; (16) that at all times after June 19, 1942, and particularly on July 14, 1942, the date of said option agreement and upon August 28, 1942, the date of the acquisition of the legal title by the said Osborne to said tract of land, the said Osborne knew and had reason to believe that said tract of land was suitable for the then known needs of his said employer, Jefferson County, Texas; (17) That the said P. L. Osborne did not exhibit said tract of land to the State Highway as being an available source of material until after he, the said Osborne, had acquired legal title to said land, and did not exhibit said land to the State of Texas as being a suitable source for materials needed upon said highway until on or about September 11, 1942, although the said Osborne, prior to said date, knew and had reason to believe that the same was available and suitable for the needs of his said employer; (18) that the said Osborne, after securing legal title to said land as aforesaid, he exhibited the same to the engineers representing the State Highway Department, and said engineers, did determine that the source material upon the Coale tract of land was both suitable and sufficient to satisfy the needs of both the State of Texas and the said Osborne's employer, Jefferson County, Texas; (19) That the said Osborne did contract with Jefferson County, Texas, acting by and through its Commissioners Court to sell to his said employer, Jefferson County, Texas, the right to take source material from the said tract of land in an amount not less than 40,000 cubic yards, and not more than 55,000 cubic yards, at a price of 20 cents per cubic yard, which said contract was made and entered into on or about October 5, 1942, and which said contract is now recorded in Volume 24, page 41, of the Commissioners Court Minutes of Jefferson County, Texas, reference to which is hereby made; (20) that the said P. L. Osborne, did on or about October 5, 1942, execute and deliver unto the State of Texas, acting through the State Highway Commission, a right-of-way easement in, on and across a portion of the said Coale tract of land, wherein and whereby the State of Texas acquired the right to take certain source material from a portion of said property * * *; (21) that by reason of the fact that the said Osborne acquired title to said land when there existed between him and his said employer, Jefferson County, Texas, the relationship of principal and agent, and when the said Osborne was

then and there charged with the specific duty of acquiring said lands for his principal, the said Osborne is now the trustee of said land, holding the legal title thereto in trust for the benefit of his said employer Jefferson County, Texas, which said county now owns equitable title to said land; (22) that unless restrained by order of this court, the said Osborne will make claim upon Jefferson County, Texas, under said contract of October 5, 1942; (23) That the payment of any sum or sums of money to the said Osborne under said contract of October 5, 1942, or in payment of any materials taken from said land would constitute an illegal expenditure of public funds. And the court here and now finds all necessary facts in support of the judgment herein rendered, and the court being of the opinion that the law and the facts are with the plaintiff and against the defendant, and each of them.

"It is, therefore, ordered, adjudged and decreed by the court that as to the contract of land known and described as follows: * * * the said P. L. Osborne holds the legal title to said land in trust for the use and benefit of Jefferson County, Texas, a body politic duly organized under the laws of the State of Texas; and that said Jefferson County, Texas, is the equitable owner of said land and the said P. L. Osborne is trustee ex maleficio thereof. There further appearing to the court from the undisputed evidence and from the findings of the court that Jefferson County Texas a body politic as aforesaid, is the equitable owner of said lands heretofore described; and

"It further appearing to the court that the said P. L. Osborne holds the bare legal title to said lands in trust for the benefit of Jefferson County, Texas; and it further appearing by reason of said facts that the payment of any sums of money to the said P. L. Osborne under and by virtue of the contract of October 5, 1942, * * * would constitute an illegal expenditure of the public funds of Jefferson County, Texas, and that the payment of any sum of money whatsoever to the said P. L. Osborne under and by virtue of said contract or in payment of any material taken from said lands would constitute illegal expenditure of public funds."

### Opinion.

█ The authorities clearly support appellee's right to prosecute this suit against the defendants named in his petition to en-join the unlawful expenditure by them of the funds of Jefferson County. Terrell v. Middleton, Tex.Civ.App., 187 S.W. 367; Crampton v. Zabriskie, 101 U.S. 601, 25 L. Ed. 1070; City of Austin v. McCall, 95 Tex. 565, 68 S.W. 791; 19 Am.Jur. 139. On the facts found by the court, which in all respects material to this appeal were established by the uncontroverted evidence, there was vested in Jefferson County certain equitable rights in the 16.67 acres of land, and the source material to be taken therefrom for the use of the State of Texas in improving its public road. But Jefferson County could acquire title to this source material for the benefit of the State of Texas only by paying for it. Under no principle of equity did the district court have the power to confiscate this property by vesting the legal and equitable title thereto in Jefferson County. So, the controlling issues on the facts found by the court are the measure of appellee's rights as a taxpaying citizen of Jefferson County, and of appellant's basis of compensation.

As above stated, clearly appellee had the right to prosecute the suit to enjoin the unlawful expenditure of the funds of Jefferson County by the defendants named in his petition. Under the facts found by the court, the legal title to the 16.67 acres of land was in appellant, and notwithstanding his agency for Jefferson County and the confidential relation between him and the county, he had the legal and equitable right to sell to the county source material to be taken from this land, but with the clear limitation on this right that in making the sale he could not profit from his sale to the State of Texas to the extent of a single penny. Any price paid by the county to appellant giving him any profit on his purchase of the source material used by the State in improving its public road would be an unlawful expenditure of the county funds, and appellee as a taxpaying citizen had the right to sue to enjoin such expenditure.

█ Appellant's agency with Jefferson County was to secure source material and right-of-way for the use of the State. It was estimated by the State's engineers that the state would need not less than 40,000 cubic yards nor more than 55,000 cubic yards of source material to be taken from this land. A small amount of right-of-way has been taken. Under principles of equity, regardless of the contract, the county is entitled to take from the 16.67 acres of land for itself and for the use of the state what-

ever source material and right-of-way may be needed for the contemplated improvements, paying therefor the cost to appellant of the property so taken. Such costs may be ascertained by equitable proration of the total cost of the land between the value of the right-of-way and source material so taken by the county and the value of the land left to appellant after they are taken, all values to be determined as of the date appellant purchased.

It follows that the judgment of the lower court, divesting title to the 16.67 acres of land out of appellant and vesting it in Jefferson County, must be reversed and also that the court's order enjoining Jefferson County from paying to appellant anything for the source material used by the State of Texas must be dissolved.

In holding that appellee had the right to enjoin the unlawful expenditure of the funds of Jefferson County, our opinion must not be construed as holding that he had the right to sue to divest appellant of his title and to vest the title in Jefferson County, even had the facts entitled Jefferson County to that relief. Relief of that nature could be granted to Jefferson County only on its affirmative prayer. The judgment of the lower court is reversed and the cause remanded for a new trial in order that appellant's basis of compensation be ascertained on a full development of the facts.

Reversed and remanded with instructions.