Reversed and Remanded and Opinion filed November 20, 2003









Reversed and Remanded and Opinion filed November 20, 2003.

 

 

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-01002-CV

____________

 

TAC REALTY, INC., Appellant

 

V.

 

THE CITY OF BRYAN, TEXAS, AND
ONLY IN THEIR OFFICIAL CAPACITIES, JAY DON WATSON, MICHAEL M. BEAL, PAUL
MADISON, JOE MARIN, MITCHELL P. MOREHEAD, BOYD SHEFFIELD, AND ERNEST A.
WENTRCEK, Appellees

 



 

On Appeal from the 272nd
District Court

Brazos County, Texas

Trial Court Cause No. 02-001602-CV-272

 



 

O P I N I O N








Appellant TAC Realty, Inc. (ATAC@) complains of the trial court=s dismissal of its case for
lack of subject-matter jurisdiction.  In
response to TAC=s lawsuit seeking temporary and
permanent injunctive relief to prevent the City of Bryan (Athe City@)[1]
from spending additional funds in furtherance of certain development agreements
executed by the City, the City and the individual defendants filed a plea to
the jurisdiction asserting TAC does not have standing to challenge the
agreements.  The trial court conducted a
hearing and sustained the City=s plea.  In three issues, TAC asks this court to
determine (1) whether the trial court committed reversible error by failing to
find TAC made a prima facie showing that the development agreements violate
article 11, section 5 of the Texas Constitution, the Bryan City Charter and
Texas public policy; and (2) whether the trial court abused its discretion by
refusing to grant TAC=s request for a temporary
injunction to prevent the City from spending additional monies in furtherance
of the development agreements.  We
reverse and remand. 

Factual and Procedural Background








TAC is a Texas corporation located in Bryan, Texas.  It owns real property in the City and pays
property taxes to the City.  On November
2, 1999, the Bryan City Council approved three agreements with third-party
developers as part of a project to develop a country club, golf course, hotel,
conference center, and high-end residential area in the City (ATraditions Project@).  In this lawsuit, TAC alleges the three
agreements entered into by the City in connection with the Traditions Project
obligated the City (1) to pay for the acquisition of land, public
infrastructure improvements, and major utilities; (2) to donate land for a golf
course and millions of gallons of water for use by the golf course developer;
and (3) to contribute land and cash, in addition to a non-interest-bearing
loan, toward the construction of certain improvements.  TAC further alleges that the funds identified
by the Bryan City Council on the same day the City Council approved the
agreements were insufficient to satisfy the City=s obligations under the
development agreements.  The City does
not refute TAC=s allegation that of the five
funds identified, only two in fact existed and contained a total of $3.2
million. The City instead contends the City Council was told, prior to voting
on the agreements, that it would be necessary to issue certificates of
obligation in order to perform under the agreements.  On October 26, 2000, the City issued
approximately $17 million in Series 2000A certificates of obligation, an
authorized use of which is paying Acontractual obligations to be
incurred@ by the City in connection
with, inter alia, the acquisition of streets
and construction of improvements to real property.  The City pledged ad valorem
tax revenues during each year the certificates are outstanding and unpaid in an
amount sufficient to fund the repayment of the bonds (both principal and
interest).  The City also created an
interest and sinking fund of no less than 2% per annum.

In response to TAC=s filing of this lawsuit,
alleging the agreements violate article 11, section 5 of the Texas
Constitution and the Charter of the City of Bryan and are contrary to Texas
public policy, the City filed a plea to the jurisdiction and statement in
opposition to temporary injunction.  The
City argued TAC lacked taxpayer standing and that the City did not have a
binding obligation under the agreements when the City Council approved them,
and the agreements, which were amended, are not void under article 11, section
5 of the Texas Constitution.  The trial
court held an evidentiary hearing on the City=s plea and issued an order to
sustain the City=s plea and dismissed the case
for lack of subject-matter jurisdiction on the basis that TAC does not have
taxpayer standing to challenge the agreements. 
The trial court found that TAC failed to make a prima facie showing that
Athe City of Bryan is currently
using or will use or will have to use ad valorem tax
dollars to fund performance of the amended agreements@ or Athat the amended agreements . .
. are not in compliance with Art. 11, Section 5 of the Texas Constitution.@ 

Discussion

A.      Standard of
Review

AStanding is a prerequisite to
subject-matter jurisdiction, and subject-matter jurisdiction is essential to a
court=s power to decide a case.@  Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 553B54 (Tex. 2000).  Because subject-matter jurisdiction presents
a question of law, we review a trial court=s order granting a plea to the
jurisdiction de novo.  See Metro.
Transit Auth. v. Burks, 79 S.W.3d 254, 256 (Tex. App.CHouston [14th Dist.] 2002, no pet.).








A party may challenge the absence of
subject-matter jurisdiction by a plea to the jurisdiction and by other
procedural vehicles, such as a motion for summary judgment.  Bland Indep. Sch. Dist., 34 S.W.3d at 554.  AA plea to the jurisdiction is a
dilatory plea, the purpose of which is to defeat a cause of action without
regard to whether the claims asserted have merit.@ 
Id.  The purpose of a
dilatory plea is not to force a plaintiff to preview its case on the merits,
but to establish a reason why the merits of its case should never be
reached.  Id. 

In deciding a plea to the
jurisdiction, a court may not weigh the claims= merits but must consider only the
plaintiffs= pleadings and the evidence pertinent
to the jurisdictional inquiry.  When we
consider a trial court=s order on a plea to the jurisdiction,
we construe the pleadings in the plaintiff=s favor and look to the pleader=s intent.

Id.
at 554-55.  A trial court accepts the
factual allegations in the petition as true, unless the defendant pleads and
proves the allegations were fraudulently made to confer jurisdiction.  Id. at 554.  When reviewing a trial court=s order on a plea to the
jurisdiction, an appellate court may look to evidence outside of the pleadings.  Id. 


[T]he issues raised by a dilatory plea
are often such that they cannot be resolved without hearing evidence.  And because a court must not act without
determining that it has subject-matter jurisdiction to do so, it should hear
evidence as necessary to determine the issue before proceeding with the
case.  But the proper function of a
dilatory plea does not authorize an inquiry so far into the substance of the
claims presented that plaintiffs are required to put on their case simply to
establish jurisdiction.

. . . 

The court should, of course, confine
itself to the evidence relevant to the jurisdictional issue.  

Id.
at 554B55.

B.      Taxpayer
Standing 








In its first issue, TAC asserts the trial court improperly
ruled on the merits of TAC=s claim when the trial court
found TAC does not have standing to challenge the City=s development agreements.  The Texas Supreme Court recently addressed
the issue of taxpayer standing in Williams v. Lara, 52 S.W.3d 171 (Tex.
2001).  In Williams, the
court stated that A[t]axpayers
in Texas have standing to enjoin the illegal expenditure of public funds, and
need not demonstrate a particularized injury. 
Implicit in this rule are two requirements: (1) that the plaintiff is a
taxpayer; and (2) that public funds are expended on the allegedly illegal
activity.@  Williams, 52 S.W.3d at 179.  The City does not dispute TAC=s status as a taxpayer in
Brazos County.  The only issue is whether
TAC satisfies the second requirementCnamely, can TAC show that Apublic funds are being expended
on the allegedly illegal activity@?  See id. at 179.[2]

To determine whether the trial court erred in its
conclusion, we focus our attention on the supreme court=s discussion of taxpayer
standing in Williams.  In Williams,
former inmates and a Tarrant County resident sued Tarrant County and its
sheriff, alleging that a religious-education program (the Chaplain=s Education Unit (CEU)) in a
county jail facility violated the Texas and United States Constitutions and the
plaintiffs= civil rights under section
1983 of title 42 of the United States Code. 
Id. at 175.  The court
recognized that it had not determined what constitutes Aexpending public funds,@ and turned to federal court
authority for guidance.  See id.
at 181.  After concluding the federal
court jurisprudence of municipal taxpayer standing is most analogous to the
requirements necessary to establish taxpayer standing in Texas, the court
stated that a litigant must prove that the Agovernment is actually
expending money on the activity that the taxpayer challenges; merely
demonstrating that tax dollars are spent on something related to the allegedly
illegal conduct is not enough.@  Id. 
As an example, the court cited a Ninth Circuit Court of Appeals decision
in which the court concluded there was no taxpayer standing to challenge a
graduation prayer because spending tax dollars on renting a hall, printing
programs, buying decorations, and hiring a security guard was necessary even if
the ceremony did not include a prayer.  See
id. at 181B82 n.6 (citing Doe v.
Madison Sch. Dist. No. 321, 177 F.3d 789, 793-96
(9th Cir. 1999)). 








In Williams, the court concluded that Tarrant
County used public funds to manage the CEU: 
ABased on their own testimony,
we conclude that Sheriff Williams and Chaplain Atwell spent a significant
amount of the County=s time operating the CEU,
including shaping and promoting its religious curriculum, and therefore that
county funds were expended in operating the CEU.@  52 S.W.3d at 183.  The court further concluded that because
Flowers was a Tarrant County taxpayer, Aand because public funds are
expended in running the CEU,@ Flowers had standing as a
taxpayer to seek injunctive relief. 
Although the supreme court referred both to Atax dollars,@ see id. at 182,
and Acounty funds,@ see id. at 183,
it seems clear from the totality of the court=s opinion that a taxpayer
challenging a municipal activity is not required to prove that ad valorem tax dollars are expended on the challenged
activity, only that public funds are spent on the allegedly illegal activity.[3]  See id. at 183 n.7 (citing Harvey
v. Cobb County, 811 F. Supp. 669, 675B76 (N.D. Ga. 1993) (finding
that because a county inmate crew moved a Ten Commandments panel to new
location and cleaned it, county funds were expended, and thus plaintiff had
taxpayer standing), aff=d without opinion, 15 F.3d 1097 (11th Cir.
1994)).  Additionally, it does not matter
that the City issued certificates of obligation, even assuming the City did not
directly use ad valorem tax dollars to fund its
contractual obligations under the development agreements.








Even though the court in Williams also held that the
CEU was an unconstitutional establishment of religion, see id. at 176,
its standing analysis was entirely separate and did not turn on the question of
whether the plaintiffs proved the illegality of the challenged activity.  See id. at 180B81.  To the contrary, the court framed the dispositive issue pertinent to the standing inquiry as Awhether Tarrant County is
actually expending public funds in operating the CEU.@  Id. 
Moreover, no earlier case decided by the Texas Supreme Court supports a
contrary holding.  In both Calvert v.
Hull, 475 S.W.2d 907 (Tex. 1972), and Osborne v. Keith, 142 Tex.
262, 177 S.W.2d 198 (1944), cited in Williams, the court decided,
without extensive discussion, that the plaintiffs had standing as taxpayers,
although the contracts or governmental acts challenged were ultimately found
not to be illegal.  See Calvert,
475 S.W.2d at 908; Osborne, 142 Tex. at 264, 177 S.W.2d at 200.  The court=s language in Osborne to
the effect that a taxpayer only has standing to Aenjoin public officials from
expending public funds under a contract that is void or illegal,@ does not mean that a plaintiff
must prove that the contract is illegal in order to have standing to challenge
the contract.  177 S.W.2d at 200.  In making the quoted statement, the court was
emphasizing that taxpayers should not succeed on their claims if they are
merely challenging Aunwise or indiscreet
expenditures@ or if the contract is Amerely voidable.@  Id. 
In neither case did the court address the question of a plaintiff=s standing as a threshold
issue.  Based on our review of the
relevant case law, the same is true for all earlier Texas cases involving
challenges to governmental acts under article 11, section 5 of the Texas
Constitution.  We have been able to find
only a few that mention standing and those statements are contained in
dicta.  See Hoffman v. Davis, 128
Tex. 503, 508, 100 S.W.2d 94, 96 (1937) (AWhen a taxpayer brings an
action to restrain the illegal expenditure by the commissioners= court of tax money he sues for
himself, and it is held that his interest in the subject-matter is sufficient
to support the action . . . .@); City of Austin v. McCall,
95 Tex. 565, 577, 68 S.W. 791, 794 (1902) (A>Of the right of resident
taxpayers to invoke the interposition of a court of equity to prevent an
illegal disposition of the moneys of the county, or the illegal creation of a
debt which they in common with other property holders of the county may
otherwise be compelled to pay, there is at this day no serious question.=@) (quoting Crampton
v. Zabriskie, 101 U.S. 601, 609 (1879)).








In conclusion, the court=s clarification of taxpayer
standing in Williams does not require that a plaintiff prove the
challenged activity is illegal.  But,
more than an allegation of unlawful expenditure is required.  Plaintiffs first must allege and prove they
pay ad valorem taxes. 
Williams, 52 S.W.3d at 180 (holding payment of sales taxes is not
sufficient to confer taxpayer standing). 
Second, plaintiffs must allege and prove public funds are being spent on
the alleged illegal activity.  Id.
at 179.  As we noted above, in deciding a
plea to the jurisdiction, a reviewing court accepts the factual allegations in
a plaintiff=s petition as true, unless the
defendant pleads and proves the allegations were fraudulently made to confer
jurisdiction.  See Bland, 34
S.W.2d at 554.  The City has not pleaded
or proved TAC fraudulently made allegations in its petition in an effort to
confer standing.  We are not fearful that
our holding will open a floodgate of taxpayer lawsuits challenging municipal
contracts because affording a plaintiff standing to challenge municipal
expenditures does not necessarily mean that the resulting suit or claim will
succeed on the merits.  We are bound by
the Texas Supreme Court=s pronouncement in Williams,
and apply the rule for taxpayer standing announced in it.[4]








As Bland made clear, a hearing and evidence on the
question of whether TAC is a property taxpayer is proper.   See id. at 554 (stating that
evidentiary inquiry into the nature and purpose of plaintiff organization to
determine if it has standing to assert claims on behalf of its members Adoes not involve a significant
inquiry into the substance of the claims@).  However, a hearing on the merits of TAC=s claim in response to the City=s plea to the jurisdiction was
not proper.  See id. at 554B55 (AA plea to the jurisdiction
cannot be used to require the plaintiff to prove the damages to which he is
entitled in order to show that they exceed the court=s jurisdictional limits.@).  Turning our attention to the trial court=s disposition of the City=s plea to the jurisdiction, the
evidence considered by the trial court went to the merits of TAC=s claimCnamely, whether the development
agreements at issue violate the Texas Constitution.  Cf. id. at 555 (concluding evidence
offered by school district did not go to the merits of the plaintiffs= claim that the Public Property
Finance Act was violated but only to the question of whether the plaintiffs had
standing).  Although the court in Bland
did note that the evidence properly considered by the trial court in that case
related to the Abasic nature of the finance
arrangement@ at issue, see id., that
does not mean that a trial court should decide the merits of a taxpayer=s claim in order to determine
if a plaintiff has standing. The plaintiffs in Bland challenged a
lease-purchase agreement between the school district and Citicorp, Inc. to
allow for the construction of a new school, contending that it violated the
Public Property Finance Act.  Id.
at 549.  The court concluded that the
plaintiffs lacked standing because all obligations under the contract had been
completed except for the school district=s obligation to repay the
loan.  Id. at 556.  Construction of the school was complete and
the building was occupied.  Id.  Citicorp had performed its obligations under
the contract; only the school district had any remaining obligationCto repay the loan.  Id. 
The court=s holding in Bland was
narrow: AWhen all that remains is a
school district=s repayment of a loan for work
completed, allowance of a taxpayer action to prohibit such repayment threatens
a substantial interference with governmental actions.@  Id. at 558.

The issues in this case are quite different than those
presented in Bland.  It is undisputed
that the City has spent or is spending public funds on the agreements TAC
challenges.  Whether those dollars are
from funds already segregated by the City for any particular purpose or are
from ad valorem tax dollars earmarked for this
purpose is not relevant to the question of whether TAC has standing.  The City does not contend TAC fraudulently
pleaded its allegations in an effort to devise standing.  Yet, in reaching its conclusion that TAC did
not have standing, the trial court inappropriately ruled on the merits of TAC=s claims.

                                                              








                                                      Conclusion

We hold that the trial court=s finding that TAC lacked
standing because it failed to make a prima facie showing that the
Traditions Project development agreements violate article 11, section 5 of the
Texas Constitution was an improper ruling on the merits of TAC=s claim.  Construing the allegations in the
original petition in TAC=s favor, we conclude the trial
court erred in finding that TAC does not have taxpayer standing to challenge
the agreements.  Accordingly, we sustain
TAC=s first point of error. 

Because of our disposition of TAC=s first point of error, we do
not decide whether TAC is entitled to injunctive relief.  Although we recognize the trial court=s findings in essence
constitute a decision on the merits, the trial court did not rule on TAC=s request for injunctive
relief.  In the absence of a ruling, we
cannot decide whether TAC is entitled to injunctive relief.  See Huston v. F.D.I.C., 663 S.W.2d
126, 129 (Tex. App.CEastland 1983, writ ref=d n.r.e.)
(AOnly such matters which were
presented before the trial court will be reviewed upon this appeal from the
order sustaining the defendant=s plea to the jurisdiction and
dismissing the cause.@) (quoting Paradissis
v. Royal Indemn. Co., 496 S.W.2d 146, 148 (Tex. Civ. App.CHouston [14th Dist.]
1973), aff=d, 507 S.W.2d 526 (Tex. 1974)); Watson
v. Missouri-Kansas-Texas R.R. Co. of Texas, 173 S.W.2d 357, 362 (Tex. Civ. App.CEl Paso 1943, no writ) (stating
that because trial court did not pass on the merits of the case, but sustained
the intervenor=s plea to the jurisdiction,
dissolved the temporary injunction, and dismissed the case, there was nothing
before the court of appeals to review except for the trial court=s action in dismissing the
cause).

We reverse the trial court=s judgment and remand this case to the
trial court for further proceedings consistent with this opinion.        

 

/s/      Leslie Brock Yates

Justice

 

Judgment
rendered and Opinion filed November 20, 2003.

Panel
consists of Justices Yates, Hudson, and Frost.











[1]  The individual
defendants were sued only in their official capacities in order to effectuate
the injunctive relief sought by TAC.





[2]  TAC argues the
trial court committed reversible error by failing to find TAC made a prima
facie showing that the agreements violate article 11, section 5 of the Texas
Constitution.  Although TAC cites the
rule for taxpayer standing announced in Williams, and argues it need not
prove the illegality of the challenged contracts for purposes of determining
standing, TAC contends it nevertheless proved the agreements= illegality. Because a resolution of whether TAC
proved the illegality of the challenged agreements necessitates this court
making a merit-based determination, we decline to reach this issue. We only
decide whether TAC established taxpayer standing.





[3]  Obviously, citizens may not know how
municipalities allocate their tax revenues, and it would be overly burdensome
and impractical to require plaintiffs to trace particular tax revenues to the
funds being spent on allegedly illegal activity.  It is also conceivable that much of Texas
case law presumes Apublic funds@ equates to Atax dollars@ because common sense dictates that
municipal governments operate using property tax revenues.





[4]  We are unable
to find an opinion reflecting that any Texas court of appeals has applied the
rule enunciated in Williams to decide whether a plaintiff has standing
as a taxpayer to challenge municipal activity. 
We thus appear to be the first court of appeals to be faced with this
issue since the Texas Supreme Court decided Williams.  However, we note that federal courts of
appeals= decisions discussing municipal taxpayer standing are
in accord with our holding that a taxpayer need not prove the illegality of the
challenged activity to establish standing. 
See generally, e.g., Doe v. Beaumont Indep.
Sch. Dist., 173 F.3d 274, 282 (5th Cir. 1999) (A[T]o establish . . . municipal taxpayer standing . . .
a plaintiff must show only that (1) he pays taxes to the relevant entity, and
(2) tax revenues are expended on the disputed practice.@) (citations omitted) (emphasis added); Clay v.
Fort Wayne Cmty. Sch.,
76 F.3d 873, 879 (7th Cir. 1996) (A[M]unicipal taxpayers have standing when they object to a
disbursement of funds occasioned solely by the alleged unconstitutional
conduct.  Municipal taxpayer status does
not confer standing absent some allegation by the plaintiffs of an
illegal use of tax revenues.@) (citations omitted) (emphasis added); United
States v. New York, 972 F.2d 464, 470 (2d Cir. 1992) (stating proposition Amunicipal taxpayers have standing to challenge
allegedly unlawful municipal expenditures,@ and
concluding plaintiff had standing to challenge city=s expenditure of funds on contracts, but affirming
district court=s grant of summary judgment in favor of city on
plaintiff=s claims) (citations omitted).